# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**August 5, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

JOHN ANDERSON KINARD,    )
              )
    Plaintiff/Appellee,    )    Rutherford Chancery
              )    No. 94DR-318
VS.               )
              )    Appeal No.
LINDA KINARD,        )    01A01-9606-CH-00265
              )
    Defendant/Appellant.    )

## APPEAL FROM THE CHANCERY COURT
## FOR RUTHERFORD COUNTY
## AT MURFREESBORO, TENNESSEE

## THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

For Plaintiff/Appellee:

Dicken E. Kidwell
Murfreesboro, Tennessee

For Defendant/Appellant:

J. Russell Heldman
Franklin, Tennessee

## AFFIRMED AS MODIFIED
## AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a divorce ending a long-term marriage. The husband filed suit to divorce his wife of thirty years in the Chancery Court for Rutherford County, and the wife counterclaimed for a divorce from bed and board. The trial judge, sitting without a jury, declared the parties divorced, divided the marital property, and awarded the wife rehabilitative alimony for three years. The wife takes issue on this appeal with the decision to declare the parties divorced, the division of marital property, and the failure to award her long-term spousal support and attorney's fees. She also insists that the trial judge should have recused himself because of his prior professional association with the husband's lawyer. We conclude that the trial judge was not disqualified from hearing this case. While we also find that declaring the parties divorced was proper, we have determined that the division of marital property and the spousal support award should be modified but that the wife should not receive an additional award for her legal expenses.

## I.

Linda Kinard and John A. Kinard were married in August 1964. Mr. Kinard is a licensed pharmacist. Ms. Kinard was a school teacher when the parties married but, at Mr. Kinard's request, she left teaching after the first year of the marriage when she became pregnant with the first of their two children. The couple bought their first pharmacy several years later. Today, the business, Drug Centers, Inc., has grown into a chain of nine drugstores.

Marital difficulties began to surface in 1992 when the parties' last child left home and Mr. Kinard reduced Ms. Kinard's role in the business. In March 1994, after thirty years of marriage, Mr. Kinard filed suit in the Chancery Court for Rutherford County seeking a divorce from Ms. Kinard based on irreconcilable differences and inappropriate marital conduct consisting of interfering with his business and making unfounded accusations about his fidelity. Ms. Kinard counterclaimed for a divorce from bed and board. Following a bench trial, the trial judge declared the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b) (1996), divided the marital estate, awarded Ms. Kinard rehabilitative spousal support of $1,000 per month for thirty-six months, and denied Ms. Kinard's request for an additional award for her attorney's fees.

Ms. Kinard retained a new lawyer after the trial judge announced his decision. Within thirty days after the entry of the final divorce decree, Ms. Kinard's new lawyer filed motions requesting the trial judge to alter or amend the divorce decree, to grant a new trial, and to recuse himself because of his prior professional relationship with Mr. Kinard's lawyer. Following a hearing, the trial judge denied the recusal motion as well as Ms. Kinard's request for an interlocutory appeal. Ms. Kinard has now perfected this appeal as of right in which she raises numerous objections relating to the manner in which the divorce was granted, the division of the marital property, the spousal support award, and the trial judge's refusal to order Mr. Kinard to pay her legal expenses.

## II.

### SUPPLEMENTATION OF THE RECORD

Before proceeding further, we turn our attention to the evidentiary record. Following the entry of the final divorce decree and the denial of the Tenn. R. Civ. P. 59 motions, the trial judge permitted Ms. Kinard to reopen the record to present additional testimony that she would have given at trial had she been represented by her present lawyer. We must determine whether this novel process is contemplated or permitted by the Tennessee Rules of Civil Procedure because the answer to this question will dictate the facts that we will consider in rendering this decision.

After the trial judge denied Ms. Kinard's post-trial motions and her motion for an interlocutory appeal, her present lawyer requested permission to make an "offer of proof" because the denial of Ms. Kinard's motion for a new trial meant that she would not be "back at square one" and would not be given an "opportunity to start over." As best as we can understand her lawyer's reasoning, he wished to take Ms. Kinard's deposition in order to preserve for appellate review the substance of additional testimony that she would have given at a second trial had the trial judge recused himself and granted a new trial. The lawyer believed that this testimony would somehow become relevant if this court later determined that the trial judge should have recused himself. The trial judge agreed to allow this "offer of proof" over Mr. Kinard's objection. In May 1996, fully ten months after the original divorce trial and four months after the denial of the post-trial motions, Ms. Kinard gave a deposition answering questions from her present lawyer that her former lawyer had not asked her in the original proceeding. This deposition is now a part of the appellate record even though it was never presented to or considered by the trial judge.

We can find no precedent for this novel post-trial fact gathering. Rather than being an offer of proof in the traditional sense, it is more accurately an attempt to include testimony in the appellate record that was not considered by the trial judge in the first instance. The reasons for Ms. Kinard's failure to present this testimony at trial are not altogether clear. Ms. Kinard does not, and based on the nature of the testimony cannot, claim that her after-the-fact testimony concerned newly discovered information. We can only conclude that Ms. Kinard's present lawyer decided that her former lawyer should have asked her these questions at trial and that he decided to ask the questions himself even though the case had already been concluded.

We have determined that the substance of Ms. Kinard's May 1, 1996 deposition should not be considered on this appeal. Our jurisdiction is appellate only. *See* Tenn. Code Ann. § 16-4-108(a)(1) (1994); *Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984); *Mallicoat v. Poynter*, 722 S.W.2d 681, 682 (Tenn. Ct. App. 1986); *Foley v. Dayton Bank & Trust*, 696 S.W.2d 356, 359 (Tenn. Ct. App. 1985). While we review factual findings by a trial judge sitting without a jury de novo with a presumption of correctness in accordance with Tenn. R. App. P. 13(d), we do not customarily consider evidence that has neither been presented to nor considered by the trial judge unless it has

been made part of the record in accordance with Tenn. R. App. P. 14. Because the trial judge never considered Ms. Kinard's May 1, 1996 deposition, we decline to consider it now.

There is a second reason for declining to consider Ms. Kinard's May 1, 1996 deposition. Ms. Kinard's lawyer believed that the deposition would be needed only if an appellate court were to determine that the trial judge should have granted a new trial and then recused himself. As we discuss more fully in Section III, we have determined that the trial judge did not err by declining to recuse himself from the case. Accordingly, there is no need to consider Ms. Kinard's answers to questions that her former lawyer failed to ask her at trial.

## III.
### THE TRIAL JUDGE'S DISQUALIFICATION

We turn now to the question of the trial judge's qualification to hear this case. After the trial judge had entered the final divorce decree, Ms. Kinard's present lawyer insisted that he should have granted a new trial and then stepped aside because of his prior professional relationship with Mr. Kinard's lawyer. We have determined that the evidence does not provide a reasonable basis for questioning the trial judge's impartiality.

### A.

Litigants, as the courts have often said, are entitled to the "cold neutrality of an impartial court." *See Leighton v. Henderson*, 220 Tenn. 91, 98, 414 S.W.2d 419, 421 (1967); *Chumbley v. Peoples Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933). The principle of judicial neutrality is embodied in both Tenn. Const. art. 6, § 11[1] and in the Code of Judicial Conduct.[2] Thus, one of the central tenets of our jurisprudence is that all litigants have a right to have their cases heard by fair and impartial judges.

The courts have also recognized, however, that the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial. *See Offutt v. United States*, 348 U.S. 11, 14, 75 S. Ct. 11, 13 (1954) (holding that "justice must satisfy the appearance of justice"); *In re Cameron*, 126 Tenn. 614, 658, 151 S.W. 64, 76 (1912). Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should recuse himself or herself if "the judge's impartiality might reasonably

---

[1] Tenn. Const. art. 6, § 11 provides, in part:

> No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he [or she] may be interested, or where either of the parties shall be connected with him [or her] by affinity of consanguinity, within such degrees as may be prescribed by law, or in which he [or she] may have been of counsel, or in which he [or she] may have presided in any inferior Court, except by consent of all the parties.

[2] *See* Tenn. S. Ct. R. 10, Canon 2(A).

be questioned." *See* Tenn. S. Ct. R. 10, Canon 3(E)(1); *Chumbley v. Peoples Bank & Trust Co.*, 165 Tenn. at 659, 57 S.W.2d at 788.

The decision of whether recusal is warranted must in the first instance be made by the judge himself or herself. Unless the grounds for recusal fall within those enumerated in Tenn. Const. art. 6, § 11 or Tenn. Code Ann. § 17-2-101(1994), these decisions are discretionary. *See State v. Raspberry*, 875 S.W.2d 678, 681 (Tenn. Crim. App. 1993); *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989); *Wiseman v. Spaulding*, 573 S.W.2d 490, 493 (Tenn. Ct. App. 1978). However, instead of making this decision based on subjective notions of his or her impartiality, a judge must be more objective and must ask what a reasonable, disinterested person knowing all the relevant facts would think about his or her impartiality. *See Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994).

A party may lose the right to challenge a judge's impartiality by engaging in strategic conduct. Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order "to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable." *Holmes v. Eason*, 76 Tenn. (8 Lea) 754, 757 (1882); *see also Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988). Thus, recusal motions must be filed promptly after the facts forming the basis for the motion become known, *see United States v. Baker*, 441 F. Supp. 612, 616 (M.D. Tenn. 1977); *Hunnicutt v. Hunnicutt*, 283 S.E.2d 891, 893 (Ga. 1981), and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality. *See In re Cameron*, 126 Tenn. at 663, 151 S.W. at 78; *Radford Trust Co. v. Lumber Co.*, 92 Tenn. 126, 136-37, 21 S.W. 329, 331 (1893); *Holmes v. Eason*, 76 Tenn. (8 Lea) at 761.

**B.**

The fact that a judge was once professionally associated with a lawyer for one of the parties in a case is not, without more, grounds for disqualification. *See* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 87-1524 (1987). Thus, in the absence of other disqualifying circumstances, courts have consistently concluded that a judge is not disqualified when the lawyer for one of the parties is a former law partner,[3] associate,[4] or co-counsel.[5] A judge is likewise not disqualified solely because he or she may at one time have had an office sharing arrangement with a lawyer for one of the parties. *See Savani v. Savani*, 403 S.E.2d 900, 903 (N.C. App. 1991). When a motion for disqualification based on a judge's former association with a party's lawyer is filed, the totality of the circumstances should be examined, including the following factors:

---

[3]*See Alvarado Morales v. Digital Equip. Corp.*, 699 F. Supp. 16, 18 (D.P.R. 1988); *Dolphin v. Wilson*, 942 S.W.2d 815, 817-18 (Ark. 1997); *Ferren v. City of Sea Isle City*, 580 A.2d 737, 739-40 (N.J. Super. Ct. App. Div. 1990).

[4]*See National City Bank v. Shortridge*, 691 N.E.2d 1210, 1211 (Ind. 1998).

[5]*See Bonelli v. Bonelli,* 570 A.2d 189, 192 (Conn. 1990).

(1) the nature and extent of the prior association, (2) the length of time since the association was terminated, (3) the possibility that the judge might continue to benefit from the relationship, and (4) the existence of personal or social relationships springing from the professional relationship. *See Bonelli v. Bonelli*, 570 A.2d at 192; *James v. James*, 656 N.E.2d 399, 404-05 (Ohio Ct. App. 1995).

The trial judge and the lawyer representing Mr. Kinard had an office sharing arrangement lasting two years that ended eight years before Mr. Kinard sought a divorce from Ms. Kinard. The trial judge had severed all financial ties with Mr. Kinard's lawyer two years before the divorce suit was filed when he sold the lawyer his interest in the building that housed their offices. There is no suggestion in the record that the trial judge stands to benefit in any way from Mr. Kinard's lawyer's practice or that he was ever involved in the present case or any other matter related to the present case. Mr. Kinard's lawyer did not undertake to represent him in this divorce proceeding until long after his professional relationship with the trial judge had ended.[6] There is likewise no indication in the record that any social or personal relationship that might exist between the trial judge and Mr. Kinard's lawyer prevented the trial judge from being impartial.

Thus, Ms. Kinard is left with only one circumstance to substantiate her claim that the trial judge should have disqualified himself from hearing this case. She asserts that a reasonable person would conclude that the trial judge could not be impartial because he had an office sharing arrangement with Mr. Kinard's lawyer during a portion of the time that Mr. Kinard's lawyer was representing Mr. Kinard in a lawsuit entirely unrelated to this divorce case. This relationship is simply too attenuated to draw such a conclusion. There is no evidence in the record that the trial judge played any role in or received any benefit from the earlier litigation on behalf of Mr. Kinard. Considering the totality of the circumstances, we find that a reasonable person, knowing all the relevant facts, would not conclude that the trial judge could not be impartial. Accordingly, the trial judge did not abuse his discretion by denying Ms. Kinard's recusal motion after the final divorce decree had been entered.

## IV.
### THE AWARD OF THE DIVORCE TO BOTH PARTIES

Ms. Kinard also takes issue with the trial judge's decision to grant both parties a divorce pursuant to Tenn. Code Ann. § 36-4-129(b) instead of assigning fault to Mr. Kinard. She argues that the record contains ample evidence of Mr. Kinard's fault, including his emotional and verbal abuse. Mr. Kinard does not deny that his conduct contributed to the dissolution of the marriage but points to the evidence of Ms. Kinard's inappropriate conduct occurring primarily after their son left home.

---

[6]The trial judge would have been required to recuse himself if he had still had an office sharing arrangement with Mr. Kinard's lawyer when Mr. Kinard filed for divorce. See Tenn. S. Ct. R. 10, Canon 3(E)(1)(b) requiring disqualification if "a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter."

Little can be gained from reciting the details of these parties' complaints about the other's conduct during the waning years of the marriage. Ms. Kinard testified to two incidents in which Mr. Kinard was physically, verbally, and emotionally abusive. Mr. Kinard explained how Ms. Kinard's suspicions and jealousy prompted her to disrupt his business by calling his employees to question them about his whereabouts and his conduct with his female employees. After reviewing the evidence de novo in accordance with Tenn. R. App. P. 13(d), we cannot say that the evidence preponderates against the trial judge's conclusion that both parties contributed to the breakup of the marriage and, therefore, that they should simply be declared divorced in accordance with Tenn. Code Ann. § 36-4-129(b).

## V.
### THE DIVISION OF THE MARITAL ESTATE

We turn now to the division of the parties' not insubstantial marital estate. Ms. Kinard asserts that the overall division of the estate is inequitable and that the trial judge incorrectly valued the Drug Centers, Inc. note. Our review of this issue has been hampered by the trial judge's failure to properly classify the property and to place a value on the property whose value was disputed. We have determined that the division of the marital estate must be modified to correct the valuation and classification errors and to provide a more equitable distribution of the marital property and debts.

### A.

The Kinards' marital estate was worth between $600,000 (according to Ms. Kinard) and $850,000 (according to Mr. Kinard). While Ms. Kinard tended to value marital property lower than Mr. Kinard, the principal reason for the difference in their valuation evidence is that Mr. Kinard included approximately $146,500 worth of property in the marital estate that Ms. Kinard asserts should have been classified as her separate property.[7] The principal assets in the estate were the Kinards' house, a note payable to the Kinards from Drug Centers, Inc., the stock in Drug Centers, Inc., and Mr. Kinard's Drug Centers, Inc. retirement account. The parties disputed the value of the house, the Drug Centers note, and the Drug Centers stock, but the trial judge did not undertake to resolve this conflicting evidence.

The trial judge adopted Mr. Kinard's proposed division of the marital estate with one exception. Instead of awarding Mr. Kinard all of his Drug Centers pension, the trial judge decided that Ms. Kinard should receive thirty percent of the value of this asset. Recognizing that Mr. Kinard did not desire Ms. Kinard to share in his pension, the trial judge gave him the option of paying Ms. Kinard $500 for sixty months instead. Under this arrangement, and using Mr. Kinard's valuations

---

[7]This property includes (1) real property in Starkville, Mississippi, (2) the Dean Witter stocks, (3) Ms. Kinard's jewelry, (4) the parties' crystal, sliver, and china, and (5) the 10-year-old Mercedes. Ms. Kinard asserted that this property was worth $146,435; while Mr. Kinard placed a value of $146,500 on the property.

of the property, Ms. Kinard received property worth approximately $448,150, while Mr. Kinard received property worth approximately $412,850.

In addition to the $146,500 in property that Ms. Kinard asserts should have been classified as her separate property, Ms. Kinard received the marital residence, the household goods and furnishings, the Drug Centers note at a reduced face value, thirty percent of Mr. Kinard's Drug Centers retirement, and several other pieces of property. Mr. Kinard received all the Drug Centers stock, Florida real estate, a Gatlinburg timeshare, the remaining seventy percent of his Drug Centers retirement, and his gun and coin collections. He also received his interest in his mother's home on Kay Street.

## B.

Dividing a marital estate necessarily begins with the classification of the property as either separate or marital property. *See McClellan v. McClellan,* 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993). The definitions of "separate property" and "marital property" in Tenn. Code Ann. § 36-4-121(b) (1996) provide the ground rules for the task. Once the property has been classified, the trial judge's goal is to divide the marital property in an essentially equitable manner. A division is not rendered inequitable simply because it is not precisely equal, *see Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every piece of marital property. *See Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown,* 913 S.W.2d at 168, and appellate courts accord great weight to a trial judge's division of marital property. *See Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *See Brown v. Brown,* 913 S.W.2d at 168; *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

## C.
### THE VALUATION OF THE DRUG CENTERS NOTE

Both parties listed a $145,952 note by Drug Centers on their pretrial statements of marital property. At trial, Ms. Kinard stated that the value of the note remained at $145,952. Mr. Kinard asserted, however, that the amount of the note should be reduced to $98,000 to reflect a $35,000 debt

he owed to Drug Centers and $12,000 advance of corporate funds used to purchase Ms. Kinard's Mercedes. The trial judge accepted Mr. Kinard's testimony concerning the value of the note.

The valuation of a marital asset is a question of fact. It is determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. *See Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence. *See Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995); *Wallace v. Wallace*, 733 S.W.2d at 107. On appeal, we presume the trial judge's factual determinations are correct unless the evidence preponderates against them. *See Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

The exact status of Mr. Kinard's debt to Drug Centers was never fully developed at trial. Mr. Kinard admitted that he could not produce a note evidencing the $35,000 debt. Drug Centers's December 31, 1993 balance sheet listed a $25,000 receivable from Mr. Kinard, but this indebtedness had been reduced to approximately $4,200 by the time the company prepared its September 30, 1994 balance sheet. Mr. Kinard's own sworn financial statement dated October 17, 1994 did not list any personal debt to Drug Centers. This evidence strongly indicates that if Mr. Kinard ever owed Drug Centers $35,000, he had repaid this debt prior to the divorce trial. Accordingly, after reviewing the record in accordance with Tenn. R. App. P. 13(d), we have determined that the evidence preponderates against the trial judge's conclusion that the value of the Drug Centers note awarded to Ms. Kinard should be reduced by $35,000.

We have also determined that the evidence preponderates against the trial judge's conclusion that the value of the Drug Centers note should be further reduced by $12,000. At trial, Mr. Kinard asserted that Drug Centers owned the Mercedes and that the company should be paid $12,000 before transferring the title of the car to Ms. Kinard. For her part, Ms. Kinard testified that the Mercedes had been a Christmas gift from Mr. Kinard and even produced a note written by Mr. Kinard stating, "Merry Christmas. A new Mercedes." Based on this evidence, we find that the evidence preponderates in favor of concluding that the Mercedes was a gift to Ms. Kinard, and thus that it was her separate property. By the same token, any indebtedness to Drug Centers that Mr. Kinard incurred in order to purchase this present for his wife should, in the final analysis, be borne by Mr. Kinard. Thus, the $12,000 is a matter between Mr. Kinard and Drug Centers, and the trial judge erred by reducing the amount of the Drug Centers note by that amount.

The trial judge should not have reduced the value of the Drug Centers note awarded to Ms. Kinard by $47,000. Accordingly, we amend the property settlement to provide that the Drug Center note awarded to Ms. Kinard as part of the division of the marital estate should be valued at its face amount – $145,952.

# D.

## THE CLASSIFICATION OF THE SEPARATE PROPERTY

We turn next to the four remaining items of property that Ms. Kinard asserts were her separate property even though the trial judge classified them as marital property.[8] Because the trial judge adopted Mr. Kinard's proposed property division, it necessarily adopted Mr. Kinard's assertion that this property should be classified as marital property. We have determined that the evidence preponderates against this conclusion.

An integral part of the process of dividing the property interests of divorcing parties is identification and distribution of the parties' separate property. *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Property should not be included in the marital estate unless a party can prove that it is marital property as defined in Tenn. Code Ann. § 36-4-121(b)(1)(A). *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Separate property cannot, by definition, be included in the marital estate, and Tenn. Code Ann. § 36-4-121(b)(2)(D) provides that property acquired by a spouse during a marriage by "gift, bequest, devise or descent" is separate property. Thus, gifts by one spouse to another that might otherwise be considered marital property should be classified as the recipient spouse's separate property. *See Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989); *Batson v. Batson*, 769 S.W.2d at 859.

The evidence does not support the trial judge's conclusion that these four items of property were marital property. Ms. Kinard testified without contradiction that she received the crystal, china, and silver valued at $20,800 as wedding gifts and then throughout the marriage on special occasions such as her birthday or anniversary or at Christmas. Both parties testified that Mr. Kinard opened the brokerage accounts at Dean Witter and J. C. Bradford valued between $45,635 and $51,500 for his wife during the marriage. Mr. Kinard stated that he placed these accounts in Ms. Kinard's name because she had complained that she had no assets in her own name. He wrote the following note to Ms. Kinard when he set up the Dean Witter account: "I have told Edgar to put this account in <u>your</u> <u>name</u> – not joint. I can still speak with him – but it will be <u>your</u> money and decision." (emphasis in the original). Ms. Kinard's personal jewelry, valued at $38,000, were likewise gifts to her during the marriage.

The final item of property is the property in Starkville, Mississippi where the parties' son lives. The parties purchased this property during the marriage and placed the title in the name of Ms. Kinard and their son. Thus, Ms. Kinard is the owner of record of an undivided one-half interest of this property. Even though the property was acquired with marital funds, the fact that it was placed in the name of Ms. Kinard and her son is strong evidence that the parties intended for this property to be controlled by Ms. Kinard and her son rather than by the parties themselves.

---

[8]In the preceding section, we concluded that the evidence preponderates in favor of concluding that the Mercedes was a gift to Ms. Kinard and, therefore, her separate property.

Having reviewed the evidence in accordance with Tenn. R. App. P. 13(d), we have determined that the evidence preponderates against the trial judge's classification of Ms. Kinard's jewelry, the crystal, silver, and china, the brokerage accounts, and Ms. Kinard's interest in the Starkville property as marital property. While we agree that Ms. Kinard should have received this property, it should not have been as part of the division of the marital estate but rather as a distribution of her separate property. The gross value of the parties' marital estate should be reduced by the total value of this property.

## E.

### THE DEBT TO UNION PLANTERS BANK

The final matter relating to the division of the marital estate involves the allocation of the responsibility for paying the $100,000 home equity loan with Union Planters Bank. The trial judge determined that this debt should be Ms. Kinard's responsibility, ostensibly because she received the house that secured the debt. The evidence does not support this conclusion.

Marital debt, like marital property, should be divided equitably in accordance with the factors in Tenn. Code. Ann. § 36-4-121(c) and in light of (1) which party incurred the debt, (2) the purpose of the debt, (3) which party benefitted from incurring the debt, and (4) which party is better able to repay the debt. *See Cutsinger v. Cutsinger*, 917 S.W.2d at 243; *Mahaffey v. Mahaffey*, 775 S.W.2d at 623-24. Marital debts need not be divided in precisely the same manner as the marital assets, although they frequently follow their related assets. *See Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989); *Mansfield v. Mansfield*, No. 01A01-9412-CH-0058, 1995 WL 643329, at *9 (Tenn. Ct. App. Nov. 3, 1995) (No Tenn. R. App. P. 11 application filed).

Most of the home equity loan was used for speculative investments. Ms. Kinard testified that $45,000 was used to purchase stock and that $30,000 was used to make some oil investments. She also testified that Mr. Kinard took $4,000 of the proceeds for his personal use shortly after the separation. Ms. Kinard is fifty-five years old. She is currently unemployed, and her monthly expenses are approximately $5,500. Although qualified to teach at the secondary level, she had, by the time of the trial, applied and been rejected for at least ten jobs. On the other hand, Mr. Kinard earns more than $80,000 a year and, as the major stockholder of Drug Centers, has a far better chance at accumulating capital assets and generating the income required to repay this indebtedness. After considering the factors applicable to the apportionment of marital debt, we have determined that Mr. Kinard should be responsible for repaying this home equity loan.

## F.

The trial judge's distribution of the marital estate left Ms. Kinard with marital property valued at $448,150 (52% of the net marital estate) and left Mr. Kinard with property valued at $412,850 (48% of the net marital estate). As a result of the adjustments in the preceding sections,

this apportionment changes. The value of the entire marital estate is decreased by $99,548 as a result of the adjustments for the increased value of the Drug Centers note and reclassification of the separate property that had been classified erroneously as marital property.[9] In addition, Ms. Kinard's share of the marital estate has been increased by $47,952 representing the adjustment in the value of the Drug Centers note and by $100,000 representing the transfer of responsibility for paying the home equity loan from Ms. Kinard to Mr. Kinard. Mr. Kinard's share of the estate is correspondingly decreased by $100,000 which represents the home equity loan that he is now responsible for repaying.

As a result of these adjustments, the net value of the parties' estate is approximately $762,452. Ms. Kinard will receive $449,602 (59%), and Mr. Kinard will receive $312,850 (41%). Under this division, Ms. Kinard will receive well over half of the marital estate, including the marital home and all household goods and furnishings, the $145,952 Drug Centers note, two automobiles, $80,000 of stocks and oil shares, and thirty percent of Mr. Kinard's retirement fund.

Retirement benefits, as marital property, are subject to the same considerations as other property during the equitable division. The division need not be mathematically precise but must reflect essential fairness in light of the facts. *See Cohen v. Cohen*, 937 S.W.2d at 832; *Kendrick v. Kendrick*, 902 S.W.2d 918, 929 (Tenn. Ct. App. 1994). Ms. Kinard has failed to point to any facts that show the division of the retirement benefits, in light of the overall property division, is inequitable. However, we do find that the judge should not have allowed Mr. Kinard to pay the benefits in monthly installment payments of $500 over sixty months. This distribution would require Ms. Kinard to pay federal income tax on the retirement benefits, which would ordinarily not be taxed at retirement. We order that Ms. Kinard's portion of the retirement account be transferred to her by a Qualified Domestic Relations Order.

## VI.

### THE SPOUSAL SUPPORT AWARD

Ms. Kinard also takes issue with the trial judge's decision to award her $1,000 in rehabilitative spousal support for thirty-six months. She insists that she is entitled to permanent spousal support and that the amount of monthly spousal support ordered by the trial judge is far less than her monthly needs. We have determined that the amount of Ms. Kinard's spousal support should be increased and that the duration of this support should be lengthened.

### A.

---

[9]The total value of the marital estate was decreased by $146,500 when we reclassified the items of property previously classified as marital property. However, it was increased by $47,952 representing the increased value of the Drug Centers note.

-12-

There are no hard and fast rules for spousal support decisions. *See Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial judges have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 351 (Tenn. Ct. App. 1989). Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d at 169; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Tenn. Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. *See Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996); *Wilson v. Moore*, 929 S.W.2d 367, 375 (Tenn. Ct. App. 1996). The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient. *See Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989). The purpose of long-term spousal support, on the other hand, is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency. *See Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997).

The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long-term or more open-ended support. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). Trial judges have the prerogative to determine the type of spousal support that best fits the circumstances of the case, and thus trial judges may award several different types of support in the same case when the facts warrant it. *See Cheatham v. Cheatham*, No. 01A01-9508-CH-00380, 1997 WL 731784, at *7 (Tenn. Ct. App. Nov. 25, 1997) (No Tenn. R. App. P. 11 application filed).

Even though fault is a relevant consideration when setting spousal support, *see* Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support decisions are not intended to be punitive. *See Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. 1984); *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946). The purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce. *See Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). Two persons living separately incur more expenses than two persons living together. Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded. *See Brown v. Brown*, 913 S.W.2d at 169. While enabling the economically disadvantaged to maintain the pre-divorce lifestyle is a laudable goal, we have realistically recognized that in most divorce cases, the courts must be satisfied with awarding "closing in money" – that is awarding the spouse sufficient funds to return as closely as is economically possible to the pre-divorce lifestyle. *See Aaron v. Aaron*, 909 S.W.2d at 411.

-13-

Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1997). *See Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Varley v. Varley*, 934 S.W.2d 659, 618 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234.

## B.

Ms. Kinard is presently fifty-five years old and in good health. She has a B.S. degree from Middle Tennessee State University and is certified to teach. However, she has been out of the workforce for thirty years as a result of the parties' decision that she should remain at home to raise their children. While Ms. Kinard is capable of working, the realities of the labor market narrow her options. It is unlikely that she will be able to match Mr. Kinard's earning capacity or that she will be able to make up the economic ground she has lost over the past thirty years.

On the other hand, Mr. Kinard, who is now sixty years old, is a licensed pharmacist and is the chief executive office and a major stockholder in a corporation that owns a chain of nine drugstores. Despite Ms. Kinard's direct and indirect contributions to this business, Mr. Kinard has received the business as part of the division of the marital estate. His income exceeds $80,000 per year and he also receives a generous fringe benefit package that provides profit sharing and pays for his automobile, insurance, and other daily needs.

Ms. Kinard has demonstrated a need for spousal support, and Mr. Kinard is able to pay support. Ms. Kinard asserts that she needs at least $3,500 per month in order to maintain a lifestyle comparable to her pre-divorce lifestyle. This record does not support a conclusion that Mr. Kinard can pay that much support. However, in light of the long duration of the marriage, Ms Kinard's contributions to Mr. Kinard's business, the disparity between the parties' ability to earn income and to accumulate assets, and the manner in which the marital estate has been divided, we have determined that Mr. Kinard should be ordered to pay Ms. Kinard $2,000 per month in long-term spousal support until she is sixty-five years old. This award for spousal support will remain in the trial judge's jurisdiction, and the trial judge may alter either the amount or duration of the award upon a proper showing by either party. This increased spousal support award shall take effect sixty days after this opinion is filed. However, it shall be suspended if either party files a timely application for permission to appeal. Should either party file an application for permission to appeal, Mr. Kinard shall continue to pay Ms. Kinard $1,000 per month while the appeal is pending and this obligation shall continue for as long as the appeal is pending and shall not expire. If Mr. Kinard files an application for permission to appeal that is later denied, he shall pay Ms. Kinard the difference between the spousal support he actually paid while the application for permission to appeal was

pending and the spousal support he would have paid had no application for permission to appeal been filed.

## VII.

### Ms. Kinard's Requests for Legal Expenses

As a final matter, Ms. Kinard asserts that the trial judge should have required Mr. Kinard to pay for her legal expenses at trial and that she is entitled to an additional award for the legal expenses incurred on this appeal. The trial judge gave no reason for its denial of her request. Based on the division of the marital property as modified by this opinion, we have determined that Ms. Kinard has not demonstrated that she should receive additional funds to defray her legal expenses.

In a divorce action, an award of attorney's fees is treated as alimony. *See Smith v. Smith*, 912 S.W.2d at 161; *Gilliam v. Gilliam*, 776 S.W.2d 81, 96 (Tenn. Ct. App. 1988). The decision to award attorney's fees lies within the sound discretion of the trial judge, s*ee Aaron v. Aaron*, 909 S.W.2d at 411; *Brown v. Brown*, 913 S.W.2d at 170, and we will not interfere with the trial judge's decision unless the evidence preponderates against it. *See Batson v. Batson*, 769 S.W.2d at 862. A party is entitled to attorney's fees when he or she lacks sufficient funds to pay his or her legal expenses or would be required to deplete other assets to do so. *See Brown v. Brown*, 913 S.W.2d at 170; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

Under the facts of this case, we have concluded that Ms. Kinard should be responsible for her own legal expenses. She has received sufficient funds in the revised division of the marital estate to enable her to pay her lawyers. These funds could easily come from the increase in the amount of the Drug Centers note. Even after she pays these expenses, she still has sufficient assets that, if properly managed, will provide her with additional income over the long term.

## VIII.

We affirm the final divorce decree as modified by this opinion and remand the case to the trial judge for whatever further proceedings may be required. We tax the costs of this appeal in equal proportions to John Anderson Kinard and to Linda Kinard and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

-15-

_____
BEN H. CANTRELL, JUDGE