IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 12, 2008 Session

## MARIAN NEAMTU v. IVETA NEAMTU

**Appeal from the Circuit Court for Davidson County**
**No. 05D-3102    Muriel Robinson, Judge**

**No. M2008-00160-COA-R3-CV - Filed January 21, 2009**

This is an appeal from a divorce action in which both Husband and Wife challenge various findings and rulings of the trial court. Husband appeals claiming the trial court erred in not finding Wife a non-credible witness, finding Wife is unable to work due to a lengthy illness, awarding Wife alimony *in futuro*, and requiring him to pay Wife's COBRA insurance. Wife appeals claiming that the trial court erred in its division of marital property and the amount of alimony awarded. We affirm the trial court's decision in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

Jeffrey L. Levy, Nashville, Tennessee, for the appellant, Marian Neamtu.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Iveta Neamtu.

**OPINION**

The parties were married in their native country of Slovakia on July 29, 1995. Soon thereafter, the newlywed couple moved to Nashville where Marian Neamtu (Husband) was employed as a professor at Vanderbilt University.

Husband has continued to work as a professor at Vanderbilt University since moving to Nashville in 1995. Iveta Neamtu (Wife), who has a master's degree in business administration, was initially unemployed upon moving to Nashville because she did not speak English; however, she soon became fluent in English, and thereafter began working in a women's clothing store. Wife subsequently started her own women's accessory line, which earned a profit in its fourth and fifth years of operation.

Wife began experiencing a myriad of medical problems in 2002. From 2002 until the time of the parties' divorce in 2007, Wife claims she suffered constant pain and was often bedridden. She

testified that she visited approximately 80 medical professionals during this time frame seeking help for her ailments. Although her business had begun to turn a profit, she testified that her medical condition made it impossible for her to work and, therefore, she ceased its operations.

Wife states that Husband was initially supportive and accompanied her to several doctors' visits, but later became unsupportive and suggested that she return to Slovakia to receive treatment and support from her family, which Wife did.

The parties separated on January 31, 2003, after which Wife remained in Slovakia for the next three years. On August 30, 2005, while Wife was still residing in Slovakia, Husband filed this action for divorce in Davidson County Circuit Court. Wife filed an Answer and Counter-Complaint for Legal Separation.

In February 2006 Husband filed a petition for divorce in Slovakia, and thereafter voluntarily dismissed his complaint for divorce in Tennessee. As a consequence of Husband's filing a petition in Slovakia, Wife filed a motion in the Davidson County Circuit Court to prohibit Husband from proceeding with the action in Slovakia. The circuit court granted Wife's motion on August 8, 2006.

Wife, who had remained in Slovakia since 2003, filed a Motion to Set Pendente Lite Support in August 2006. The trial court granted Wife's motion and set pendente lite support. Thereafter, Wife returned to Nashville and the parties proceeded through a very contentious divorce with numerous motions and hearings on a variety of pre-trial matters such as insurance and preparing the marital residence for sale. On August 17, 2007, Husband filed an Answer to Wife's Counter-Complaint for Legal Separation and his Counter-Complaint for Absolute Divorce. Wife filed an Answer on August 21, 2007. On September 6, 2007, the parties entered into an Agreed Order to sell the marital residence. Pursuant to the order, Husband was responsible for paying the mortgage until the sale of the marital residence.

The case was tried on November 28 and December 11, 2007. At trial, both parties presented witnesses. The testimony at trial mainly concerned Wife's medical condition and her ability or inability to work. Wife presented the testimony of two doctors to support her claim that she was unable to work. Her current physician testified that she suffered from a form of Lyme disease and babesiosis, which he said had been misdiagnosed for several years. Husband introduced evidence suggesting that Wife was obsessed with being sick and introduced evidence from doctors who questioned the diagnosis of Lyme disease but did not rule it out.

Following the trial, the court made findings from the bench which were memorialized in a Final Decree of Divorce entered on December 19, 2007. Wife was awarded an absolute divorce based upon Husband's inappropriate marital conduct. The trial court found that Wife was suffering from a form of Lyme disease and that she was currently unemployable. Husband was ordered to pay Wife alimony *in futuro*; however, the court expressly stated that if Wife became able to support herself in the future that such a circumstance would constitute a material change in circumstances sufficient to modify alimony. The court set alimony at $1,200 per month, which was based on

Husband's income of $77,000 per year and Wife's current inability to work. Husband was additionally ordered to pay Wife's COBRA health insurance premiums for a period of thirty-six months, $5,279.50 for Wife's unpaid medical bills, and $5,000 of Wife's attorney's fees as alimony *in solido*.

Husband's 403(b) retirement account was the only marital asset of any value. The marital residence, which was listed for sale at a price of $175,000, was fully encumbered by two mortgages. The present indebtedness on the two mortgages was $134,548.45 and $31,553.06, respectively.[1] Husband's 403(b) retirement account was valued at $101,000, of which the trial court awarded Wife $36,000 as her marital interest. The parties had substantial credit card debt and Husband was ordered to pay the majority of that debt.

Husband filed two motions seeking relief from the Final Decree of Divorce to which Wife filed a timely response. A hearing was held after which the trial court reduced the amount of unpaid medical bills to be paid by Husband and set the amount to be paid for Wife's COBRA premiums at $396.28 a month.[2] This appeal followed.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of the credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Trial courts are in a far better position than the appellate courts to observe the demeanor of the witnesses, and the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (citing *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991)).

## ANALYSIS

---

[1] At the beginning of the trial, the parties agreed that Wife would quitclaim her interest in the marital residence to Husband, Husband would be solely responsible for the two mortgages, and Husband would hold Wife harmless from any indebtedness on the residence.

[2] This amount was previously set at $366.74 but due to an increase in the premium, the amount was revised.

We first address Husband's contentions that Wife was not a credible witness and that the trial court erred in finding that she suffers from a form of Lyme disease that prevents her from working.

With regard to the trial court's credibility findings, such findings are within the discretion of the trial court, which we review pursuant to the very deferential abuse of discretion standard. *Estate of Walton*, 950 S.W.2d at 959; *B & G Constr., Inc.*, 37 S.W.3d at 465. Having examined the evidence in the record, which includes testimony of a friend of Wife and Wife's doctor, who corroborate much of her testimony concerning her ailments, we find no basis upon which to reverse the trial court's findings, or lack of findings, concerning the credibility of Wife's testimony.

As for the finding that Wife suffers from a form of Lyme disease that prevents her from working, the trial judge heard the conflicting testimony of several doctors, and the testimony of Husband and Wife and other lay witnesses concerning Wife's medical condition and ability to work. Having heard two days of testimony, the trial court determined that Wife was suffering from a form of Lyme disease and presently unable to work. Although Husband presented the testimony of doctors who disputed Wife's diagnosis of Lyme disease, Wife presented testimony of doctors who opined that she was suffering from a form of Lyme disease. Moreover, a friend of Wife testified that Wife was in constant pain and often unable to even get out of bed, thus corroborating Wife's testimony. The evidence in the record does not preponderate against the trial court's findings of fact concerning Wife having Lyme disease and her present inability to work.

## DIVISION OF MARITAL PROPERTY

Wife contends the trial court erred in its division of marital property by failing to allot her a greater proportion of Husband's retirement account, which was the only marital asset of any significant value. We, however, find no error with the division of the marital estate.

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Tennessee is a "dual property" state, *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002), thus, it cannot be included in the marital estate unless it is "marital property." The definition of that term is found in Tenn. Code Ann. § 36-4-121(b)(1)(A). "Separate property," as that term is defined in Tenn. Code Ann. § 36-4-121(b)(2), is not marital property. Therefore, separate property should not be included in the marital estate. *Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 WL 1651787, at *3 (Tenn. Ct. App. July 12, 2005). Property classification is a question of fact. *Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000). Thus, we review the trial court's classification using the familiar standard of review in Tenn. R. App. P. 13(d).

Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998).

When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact, *Kinard*, 986 S.W.2d at 231; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Smith*, 93 S.W.3d at 875.

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard*, 986 S.W.2d at 230. Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983) and this court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

The trial court awarded Wife $36,000 of Husband's retirement account,[3] which was valued at approximately $101,000. Although Husband was awarded a greater portion of the retirement account, he was held solely liable on the two mortgages and was ordered to pay a much greater portion of the marital debt than Wife.

Having examined the record, we find the trial court's division of the marital property is consistent with the factors set forth in Tenn. Code Ann. § 36-4-121(c) and is supported by a preponderance of the evidence. We, therefore, affirm the division of the marital estate.

<u>ALIMONY</u>

Both parties appeal the trial court's determination that Wife should receive $1,200 alimony *in futuro*. Husband claims the trial court erred in awarding alimony *in futuro* and not rehabilitative alimony. His claim is based on the failure of the trial court to make a threshold determination that Wife was incapable of being rehabilitated. Husband also claims the amount of alimony awarded is too high, because it is in addition to his obligation to pay Wife's COBRA premiums for three years. For her part, Wife contends she should have been awarded a greater amount of alimony, due to Husband's greater earning capacity and her inability to work as a result of her illness.

Trial courts have broad discretion to determine whether spousal support is needed and, if so, the appropriate type of alimony, amount, and duration. *Wynns v. Wynns*, No. M2007-00740-

---

[3] The marital residence, which had little if any equity due to two mortgages, was no longer at issue since Wife had given Husband a quitclaim deed to the home, and Husband was to remain solely responsible for the two mortgages on the property and hold Wife harmless in the case of foreclosure on the home.

COA-R3-CV, 2008 WL 4415786, at *2 (Tenn. Ct. App. Sept. 26, 2008) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004)).  An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion. *Id*. (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)); *see also Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998) ("Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes."). Our review of the court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness. *Wynns*, 2008 WL 4415786, at *2 (citing Tenn. R. App. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)).

The Tennessee General Assembly has stated a preference for an award of rehabilitative alimony when appropriate, however, the trial court's hands are not tied when making a determination concerning the type of alimony. *Hunt v. Hunt*, No. M1997-00221-COA-R3-CV, 2000 WL 1030622, at *4 (Tenn. Ct. App. July 27, 2000) (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991)) ("The statutory preference for rehabilitative support does not entirely displace other forms of spousal support . . . [c]ourts may award alimony *in futuro* or alimony *in solido* when the circumstances warrant."). In order to make an award of alimony *in futuro*, the trial court is required to make a threshold determination that the economically disadvantaged spouse is incapable of being rehabilitated. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995) ("There must be a threshold determination by the trial judge that, considering all relevant factors, rehabilitation of the economically disadvantaged spouse is not feasible."). In *Nesbitt v. Nesbitt*, No. M2007-00176-COA-R3-CV, 2008 WL 314631 (Tenn. Ct. App. Mar. 28, 2008), we examined the term "rehabilitation":

> Rehabilitation is defined by the marital standard of living, meaning "to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." Tenn. Code Ann. § 36-5-121(e)(1) (2005). Rehabilitation is achieved through re-education and retraining, and the alimony is a means to support the economically disadvantaged spouse through this period.
>
> Courts have struggled and varied in their holdings regarding whether a spouse can be rehabilitated. Consistently, however, courts look to the dependent spouse's education, employment history, age, health, and marital standard of living, keeping in mind cases in which the pre-divorce, marital standard of living is not economically feasible post-divorce, the effort is to achieve the ex-spouse's post-divorce standard of living. *See Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042 (Tenn. App. 2006).

2008 WL 314631, at *5.  The trial court, however, does not need to explicitly state in its decree that this finding was made, if upon an examination of the record, we can determine that the trial court

evaluated the parties' situation under the statutory factors set forth in Tennessee Code Annotated § 36-5-121(i). *See Ford v. Ford*, 952 S.W.2d 824, 828 (Tenn. Ct. App. 1996) (finding that while the trial court did not make a specific finding and identify it as such . . . the trial court had made a threshold determination that Wife was incapable of rehabilitation, as reflected by its remarks).

In this case the trial court made an express finding that Wife was suffering from some form of Lyme disease and due to this illness, she was presently unemployable. Although the trial court did not make an explicit threshold determination that Wife was incapable of being rehabilitated, it is most evident from the trial court's remarks that it made the threshold determination that Wife was incapable of rehabilitation at the time of the divorce.

Both parties also argue that the trial court erred in the amount of alimony *in futuro* awarded. Among the list of several factors to be evaluated in determining the amount of spousal support, the most significant factors to consider are the need of the dependent spouse and the obligor's ability to pay. *Burlew v. Burlew*, 40 S.W.3d 460, 470 (Tenn. 2001); *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). The trial court considered the fact that Husband earned $77,000 a year and determined that he had the ability to pay support. The trial court also considered the fact that Wife had a need because she had no income due to her chronic ailments, which is a factor the court is to consider. *See* Tenn. Code Ann. § 36-5-121(i)(5) (directing the court to consider "[t]he physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease").

An award of spousal support will not be disturbed on appeal absent an abuse of discretion. *Broadbent*, 211 S.W.3d at 220; *Kinard*, 986 S.W.2d at 234. We find nothing in the record to demonstrate that the trial court abused its discretion in the amount of alimony awarded. Therefore, we affirm the trial court's award to Wife of alimony *in futuro* and the amount of the award.

ATTORNEY'S FEES ON APPEAL

Wife requested an award for her attorney's fees on appeal. "Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In determining whether an award is appropriate, we take into consideration the "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Id.* at *6 (citing *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)). Considering these factors, including Husband's initiation of this appeal, Husband's failure to prevail on any of the issues he raised, and Wife's current inability to pay her attorney's fees, we find that Wife is entitled to recover her reasonable and necessary attorney's fees incurred on appeal.

We remand this issue to the trial court for a determination of the amount of attorney's fees Wife is entitled to recover.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Marian Neamtu.

_____
FRANK G. CLEMENT, JR., JUDGE