IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 10, 2017

## DIALYSIS CLINIC, INC. v. KEVIN MEDLEY, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 14C4843      Joseph P. Binkley, Jr., Judge**

_____

**No. M2017-00269-COA-T10B-CV**

_____

Appellants appeal the trial court's denial of their motion to recuse on the ground that the trial court conducted an impermissible ex parte communication with counsel for the opposing party. The dispute in this case stems from Appellants' pursuit of several documents that the opposing party claimed were privileged. In the course of hearing proof on the claimed privilege, the trial court announced its intention to conduct an ex parte hearing concerning the documents with only the opposing party present. Appellants did not object to the hearing. After the hearing was conducted, however, Appellants moved to recuse the trial judge on the basis that he had engaged in prohibited ex parte communications.  The trial court promptly denied the recusal motion. Discerning no error, we affirm.

**Tenn. Sup. Ct. 10B Interlocutory Appeal as Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

L. Vincent Williams, Nashville, Tennessee, for the appellants, Kevin Medley, Kevin Medley, LLC, Canvas Lounge LLC, and 3 Entertainment Group, LLC.

Peter C. Sales and Frankie N. Spero, Nashville, Tennessee, for the appellee, Dialysis Clinic, Inc.

Samuel Lanier Felker, Nashville, Tennessee, for the appellee, OutCentral, Inc.

**OPINION**

## Background

The facts of this case are not in dispute. On November 25, 2014, Plaintiff/Appellee Dialysis Clinic, Inc. ("Dialysis Clinic") filed a complaint in general sessions court against Defendants/Appellants Kevin Medley, individually and d/b/a Kevin Medley, LLC; Canvas Lounge LLC ("Canvas Lounge"); 3 Entertainment Group LLC d/b/a WKND (collectively, "Appellants"); and Defendant/Appellee OutCentral, Inc. ("OutCentral," and together with Appellants, "Defendants"). The complaint sought a declaratory judgment for unlawful detainer against Defendants. At some point, the case was removed to Davidson County Circuit Court and Mr. Medley filed a cross-complaint against OutCentral, alleging that it and Dialysis Clinic entered into an agreement by which OutCentral paid Dialysis Clinic to the exclusion of Mr. Medley.

The parties thereafter engaged in prolonged discovery, which was scheduled to be largely completed in July 2015. In the summer of 2016, however, Defendants filed a motion to extend the time for completing discovery and to compel discovery of certain documents withheld by XMI Commercial Real Estate, Inc. ("XMI"), a brokerage firm that assisted Dialysis Clinic with the purchase of the subject property. XMI refused to produce the requested documents on the grounds of attorney-client privilege and work product. On September 26, 2016, the trial court entered an order indicating that the documents had been submitted to the court for *in camera* review and that a ruling of their privilege would be forthcoming. Having reviewed the documents, the trial court later determined that an evidentiary hearing on the issue was necessary. The hearing began on November 2, 2016, and continued on November 16, 2016. Counsel for Appellants was present during both hearing dates. Near the conclusion of the second day of the hearing, the following exchange occurred:

> THE COURT: Well, a lot of this is really for my benefit. I mean, that's why we're doing most of this. Now, as a side benefit, [Counsel for Appellants] is cross-examining these people. It's a side benefit to him to that extent. But, I mean, I really just want to know the relationship of these parties. That's why we're doing this exercise.
>
> \* \* \*
>
> THE COURT: Well, but it's my responsibility to determine . . . which documents are subject to the privileges. Really, I'm the one that called this meeting. It's for my purposes, really, so I can make intelligent decisions about these documents.
>
> [Counsel for Dialysis Clinic]: I understand. I understand.
>
> THE COURT: So it's really my request. So as far as I'm concerned, I don't need anything else. I think I understand. There are a lot of people. I mean, [Dialysis Clinic] certainly understands the relationship with these parties. [Counsel for Appellants] probably understands as much -- maybe not quite

as much about the relationship of the parties as [Dialysis Clinic]'s counsel, but I didn't have any idea and now I do. Now, I understand.

So it is really for my purposes, so I can, again, make an intelligent decision about these documents and whether they are subject to the privileges that are available. And I think I understand now. I don't think I need anything else.

\* \* \*

THE COURT: . . . . Now because I have no law clerk helping -- let me back up. Because I have law clerk help, period, I'm able to set a lot of cases and a lot of motions, you know, complicated motions, complicated matters back to back to back because I have help to prepare. And we disposed of a lot of litigation in this court. And I really think that's my job is to help you guys get your cases moving toward a conclusion. And I can do that very effectively and efficiently with my law clerk help, but I don't have law clerk help for this. So it takes me a little longer.

I'm like my brethren in the rural counties that don't have a law clerk; they do their own work. And you know, some of their litigation is maybe not as complicated as what we have here; some of it is. But they're stacked up with cases, too.

So I will have to have the time to do that and take care of a docket that's, you know, that's already preset until about the middle part of December. And then what I have in mind doing, after reviewing all of the case law when it's fresh on my mind, what I would like to do is schedule another day when [Counsel for Dialysis Clinic] or somebody in your office, we can present, put on the screen each of these documents one at a time, and I want you to tell me why you think it's privileged. I will look at it and make a decision document at a time because I think that's what the case law says you do.

[Counsel for Dialysis Clinic]: That's fine, Your Honor.

THE COURT: And I need help with that process. And if I had a law clerk to help me, I would probably not need you-all to do that. But since I don't, I need you to help me with that process.

[Counsel for Dialysis Clinic]: I am perfectly willing to do that. The one thing I would remind the Court, also, is there's a smaller chunk of documents that are XMI's privileged documents, which I don't know if you want to go through those same machinations or not. That's up to the Court. Normally, there were two groups.

THE COURT: Yes.

[Counsel for Dialysis Clinic]: Now the larger group is the stuff that you're talking -- the documents that [Dialysis Clinic] has claimed privilege for. My understanding is that there's a smaller group that XMI has claimed privilege. That's their view.

[Counsel for XMI]: That's right.

THE COURT: Okay. So whoever would like to present the documents and tell me why, you know, whenever we're ready to do that. I can't remember how many documents there are, but I would like to start, you know, one morning and just dedicate a day and get it done.

\* \* \*

[Counsel for Appellants]: Although I won't be able to be at and participate in that hearing, will I be notified when that date is?

[Counsel for Dialysis Clinic]: Sure.

THE COURT: Absolutely. Absolutely. And what I'm going to do, you know, document by document, I'm going to make a decision as soon as I see it. It's going to take a while to go through them all. I believe that's the only way to do it.

[Counsel for Appellants]: I understand.

THE COURT: And those I decide are not privileged, you will get copies.

[Counsel for Appellants]: Thank you.

The trial court thereafter entered an order on November 30, 2016, memorializing its oral ruling regarding the *in camera* review. Specifically, the trial court's order noted that the review would "be attended by [Dialysis Clinic's] counsel only with respect to the documents for which [Dialysis Clinic] asserts a privilege, and by XMI's counsel only with respect to the documents for which XMI asserts a privilege."

The hearing occurred as scheduled on December 13, 2016. On the same day, counsel for Dialysis Clinic sent an email regarding the case to the assistant for the Special Master presiding over scheduling the case. The correspondence stated that counsel for Dialysis Clinic attended the *in camera* review, that the trial court made an oral ruling, and that the trial court directed counsel for Dialysis Clinic to prepare a written order. Counsel for Appellants was copied on this email. On December 16, 2016, counsel for Dialysis Clinic submitted a detailed proposed order ruling that many of the documents at issue were subject to attorney-client privilege and the work-product doctrine. The proposed order noted, however, that the trial court had also ruled that many of the documents that had been withheld were not privileged, and ordered those documents produced in either redacted or un-redacted form. The order also noted that the issue had been previously subject to hearings on November 2 and November 16, 2016 and that counsel for Dialysis Clinic testified at the November 2, 2016 hearing.

On December 19, 2016, Appellants objected to the proposed order on the ground that the order did not reflect the trial court's independent judgment pursuant to **Smith v. UHS of Lakeside**, 439 S.W.3d 303 (Tenn. 2014). Appellant's written objection also stated that "in this matter of first impression," an appearance of impropriety may have

- 4 -

been created by the *in camera* review because Appellants were not aware of "the substance of any communications that took place at the proceeding."

Consequently, on January 12, 2017, Appellants filed a motion to disqualify the trial judge. As grounds, Appellants cited: (1) that the trial court permitted an impermissible ex parte communication to take place at the *in camera* hearing with counsel for Dialysis Clinic and that Dialysis Clinic gained a procedural, substantive, or tactical advantage therefrom; and (2) that the trial court delegated its high judicial function by asking counsel for Dialysis Clinic to draft an order relating to the parties' discovery dispute. Appellants therefore argued that an appearance of impropriety was created necessitating recusal. Dialysis Clinic subsequently responded in opposition to the recusal motion.

The trial court entered a written order denying the recusal motion on January 18, 2017. Therein, the trial court found that Appellants were informed well ahead of the *in camera* hearing that it was to take place and lodged no objection to the practice until after the hearing took place. The trial court further noted that allowing counsel for Appellants to be present during the *in camera* hearing would have defeated its purpose. The trial court further ruled that Dialysis Clinic gained no procedural, substantive, or tactical advantage during the *in camera* hearing. Finally, the trial court determined that: (1) the Tennessee Supreme Court's holding in **Smith** was applicable only in the context of ruling on summary judgment motions; and (2) even if applicable, the trial court verbally provided the parties with reasoning for all its rulings, which the trial court deemed fully compliant with **Smith**.

On February 8, 2017, Appellants filed a recusal appeal to this Court. On March 7, 2017, Appellees Dialysis Clinic and OutCentral filed responses to the recusal appeal as directed by this Court. On the same day, Dialysis Clinic filed a motion for leave to file the *in camera* hearing transcript under seal for this Court's examination only, which motion was subsequently granted by this Court.

**Analysis**

The sole question in this accelerated interlocutory appeal is whether the trial court erred in denying Appellants' motion to recuse the trial judge. The Tennessee Code of Judicial Conduct is contained in Rule 10 of the Tennessee Supreme Court Rules ("Code of Judicial Conduct"). *See* Tenn. Sup. Ct. R. 10. Canon 2.11 of the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. Sup. Ct. R. 10, Canon 2.11(A). It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" **Bean v. Bailey**, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting **State v. Austin**, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, Section 11 of the Tennessee Constitution, Tennessee Code Annotated section 17-2-101,

and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that he can preside over a matter fairly and impartially, the judge nevertheless should recuse himself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis*, 38 S.W.3d at 565 (citation omitted).

Pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, a litigant is entitled to seek disqualification of a trial judge by filing a motion that: (1) is supported by an affidavit under oath or a declaration under penalty of perjury by personal knowledge or by other appropriate materials; (2) states, with specificity, all factual and legal grounds supporting disqualification of the judge; and (3) affirmatively states that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Tenn. Sup. Ct. R. 10B, § 1.01.

Upon the filing of such motion, "the judge whose recusal is sought shall either grant or deny the motion in writing." *Watson v. City of Jackson*, 448 S.W.3d 919, 927 (Tenn. Ct. App. 2014). If the motion is denied, the judge shall state in writing the grounds for the denial. Tenn. Sup. Ct. R. 10B, § 1.03. Additionally, if the motion is denied, the movant may file an accelerated interlocutory appeal of the denial. According to section 2.02 of Rule 10B of the Rules of the Tennessee Supreme Court currently in effect:

> To effect an accelerated interlocutory appeal as of right from the denial of a motion for disqualification or recusal of the trial court judge, a petition for recusal appeal shall be filed in the appropriate appellate court within twenty-one days of the trial court's entry of the order. In civil cases, a bond for costs as required by Tenn. R. App. P. 6 shall be filed with the petition. A copy of the petition shall be promptly served on all other parties, and a copy also shall be promptly filed with the trial court clerk.

Tenn. Sup. Ct. R. 10B, § 2.02.[1] The movant is also required to include copies of any "order or opinion ruling on the motion" and "a copy of other parts of the trial court record necessary for determination of the appeal." *Id.* § 2.03. We review the trial court's denial of a motion to recuse "under a de novo standard of review." *Id.* § 2.01.

Here, Appellants first argue that the trial court erred in denying their recusal motion because the trial court took part in a prohibited ex parte communication. As an initial matter, we note that communications with a judge outside the presence of both parties are generally prohibited by the Code of Judicial Conduct. Canon 2.9(A) states that a judge shall not "initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." "[E]x parte means out of the presence of the parties or their counsel, without full disclosure and opportunity to impeach, contradict or explain." *Moore v. Moore*, No. 01-A-01-9210-CH00-389, 1993 WL 54593, at *5 (Tenn. Ct. App. March 03, 1993). The prohibition against ex parte communications, however, notes several exceptions, including:

> (1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
>
>> (a) the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the ex parte communication; and
>> (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.
>
> (2) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond to the advice received.
> (3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

* * *

---

[1] By order of November 22, 2016, the Tennessee Supreme Court adopted several changes to Rule 10B, one of which increased the time for filing a recusal appeal from fifteen days to twenty-one days. Additionally, amended Rule 10B provides that the timelines contained therein for filing recusal appeals are jurisdictional. *See* Tenn. Sup. Ct. R. 10B, § 2.08. Here, there is no dispute that Appellants' recusal appeal was filed within the current timeline provided by Rule 10B.

> (5) A judge may initiate, permit, or consider any ex parte communication when expressly authorized by law to do so.

Tenn. Sup. Ct. R. 10, Canon 2.9(A). As the comments to Canon 2.9 explain: "To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge." *Id.* at Canon 2.9, cmt. 1. Furthermore: "The proscription against communications concerning a proceeding includes communications with lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted by this Rule." *Id.* at Canon 2.9, cmt. 3. If, however, "a judge receives an unauthorized ex parte communication bearing upon the substance of a matter," then "the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." Tenn. Sup. Ct. R. 10, Canon 2.9(B). As the above rules suggest, only those communications "concerning a pending or impending proceeding" or "bearing upon the substance of a matter" are prohibited by the Code of Judicial Conduct. *See* Tenn. Sup. Ct. R. 10, Canons 2.9(A)–(B). Additionally, an ex parte communication will only serve as an appropriate ground for the recusal of a trial judge "where it creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process." ***Runyon v. Runyon***, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *9 (Tenn. Ct. App. Mar. 31, 2014) (citing ***Malmquist v. Malmquist***, 415 S.W.3d 826, 839–40 (Tenn. Ct. App. 2011)).

Here, there is no dispute that the trial court conducted an *in camera* review with counsel for Dialysis Clinic and XMI present for the purpose of determining whether certain disputed documents were privileged and therefore protected from discovery. There can be no doubt that the trial judge's *in camera* hearing with only counsel for one party and a non-party present constitutes an ex parte communication because neither Appellants nor their counsel were permitted to attend the hearing. The question of whether the trial court erred in utilizing this practice to rule upon the privilege of certain documents is not at issue in this appeal. Instead, we only consider whether the trial court was required to grant Appellants' motion to recuse after the *in camera* hearing took place. Because of Appellants' acquiescence in the trial court's hearing and failure to object to the trial court's proposed procedure, we conclude that recusal was not necessary in this case.

It is significant "to recognize that a party may lose the right to challenge a judge's impartiality by engaging in strategic conduct." ***Duke v. Duke***, 398 S.W.3d 665, 670 (Tenn. Ct. App. 2012) (citing ***Kinard v. Kinard***, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). As this Court has explained: "Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" ***Kinard***, 986

S.W.2d at 228 (quoting **Holmes v. Eason**, 76 Tenn. (8 Lea) 754, 757 (Tenn. 1882)). Consequently, recusal motions must be filed "promptly after the facts forming the basis for the motion become known, . . . and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." **Kinard**, 986 S.W.2d at 228 (citing **United States v. Baker**, 441 F.Supp. 612, 616 (M.D. Tenn. 1977); **Hunnicutt v. Hunnicutt**, 248 Ga. 516, 283 S.E.2d 891, 893 (Tenn. 1981); **In re Cameron**, 126 Tenn. 614, 658, 151 S.W. 64, 76 (Tenn. 1912)).

A similar circumstance was at issue in **Gotwald v. Gotwald**, 768 S.W.2d 689 (Tenn. Ct. App. 1988). In **Gotwald**, the trial judge disclosed to the parties that he had been contacted by a third-party "regarding a case similar to the present case" prior to being assigned the underlying matter. **Id.** at 694. The trial court disclosed the contents of the communication and indicated that he had no predisposition as to the issues. Neither party objected and a lengthy trial proceeded. After the trial was concluded, however, one party filed a motion to recuse the trial judge on the basis of the purportedly improper communication. The trial judge denied the motion and this Court affirmed.

In reaching this decision, this Court noted that: "It is a well known and well accepted rule that a party must complain and seek relief immediately after the occurrence of a prejudicial event and may not silently preserve the event as an 'ace in the hole' to be used in event of an adverse decision." **Id.** (quoting **Spain v. Connolly**, 606 S.W.2d 540, 543–44 (Tenn. Ct. App. 1980)). The **Gotwald** Court also suggested that the party's failure to object violated Rule 6 of the Rules of the Tennessee Court of Appeals, which requires that appellants show in their briefs "how [any] alleged error was seasonably called to the attention of the trial judge[.]" Tenn. R. Ct. App. 6(a)(2). As such, the Court concluded that "[b]y their failure to object and the overt oral agreement of their attorneys, the parties are estopped to complain of the participation of the Trial Judge after the conclusion of the trial." **Gotwald**, 768 S.W.2d at 694.

The same is true in this case. Here, on November 16, 2016, the trial court informed Appellants and their counsel of its desire to conduct an *in camera* review concerning the purportedly privileged documents attended only by Dialysis Clinic's and XMI's counsel. As noted above, counsel for Appellants expressly noted his understanding that neither he nor his clients would be in attendance at this hearing. The trial court's intention to conduct the *in camera* hearing was further emphasized by the trial court's November 30, 2016 written order reflecting the trial court's oral ruling and scheduling the hearing for December 13, 2016. At no point prior to the December 13, 2016 hearing date did Appellants in any way object to the trial court's proposed method of adjudicating the pending privilege issue. Instead, Appellants waited until January 12, 2017 to file their motion to recuse, nearly two months after the trial court expressed its intention to conduct the *in camera* hearing. Clearly, Appellants had prior notice that the trial court would be conducting an *in camera* hearing with only counsel for Dialysis Clinic and XMI in attendance. Rather than lodge their objections to such a practice at the

time it was announced, Appellants waited until after the hearing had been conducted to voice any concerns. Like the Court in **Gotwald**, we conclude that Appellants are now estopped to now argue that recusal is warranted because of the ex parte communications that were a necessary component of the *in camera* hearing to which Appellants did not object.[2]

Appellants next assert that the trial judge's recusal is warranted because of his failure to comply with **Smith v. UHS of Lakeside**, 439 S.W.3d 303 (Tenn. 2014). In **Smith**, the trial court granted summary judgment to one party without providing any basis for its decision. **Id.** at 309. The Tennessee Supreme Court vacated the trial court's judgment on the ground that the trial court failed to comply with Rule 56.04 of the Tennessee Rules of Civil Procedure. **Id.** at 318. In reaching this result, the Tennessee Supreme Court noted that Rule 56.04 expressly requires that the trial court "state the legal grounds upon which the court denies or grants the motion[.]" **Id.** at 311–12. The **Smith** Court therefore concluded that a trial court's decision granting or denying a motion for summary judgment must be "adequately explained and [] the product of the trial court's independent judgment." **Id.** at 314.

Appellants argue that in allowing counsel for Dialysis Clinic to draft an order confirming or denying the privilege as to the disputed documents after the *in camera* review, the trial court impermissibly delegated its "high judicial function" in derogation of the rule adopted in **Smith**. Respectfully, we cannot agree. As previously noted, the **Smith** holding was based upon the Rule 56.04 requirement that trial courts state the legal grounds when ruling upon summary judgment motions. Nothing in **Smith** requires that the same standard is applicable with regard to all orders entered by the trial court or specifically to orders entered regarding discovery disputes. Even assuming that the **Smith** rule is applicable to all orders entered by the trial court, however, a careful review of the transcript provided from the *in camera* review attended by counsel for Dialysis Clinic shows that the trial court orally ruled on what specific caselaw it was relying upon in reaching its decision, as well as whether each document at issue was privileged or not privileged. The proposed order drafted by counsel for Dialysis Clinic was therefore "the product of the trial court's independent judgment," fully compliant with the Tennessee Supreme Court's holding in **Smith**. **Id.** at 314. Thus, the **Smith** ruling provides no basis for recusal in this case.[3]

---

[2] As noted above, Dialysis Clinic filed a sealed transcript from the portion of the ex parte hearing in which its counsel participated. Although not necessary to our holding herein, we note that we have thoroughly reviewed the transcript and conclude that the communications between counsel and the trial court involved only the asserted privilege or allowable scheduling matters.

[3] Because the trial court fully complied with **Smith** in this case, we need not consider whether, had the trial court failed to comply with **Smith**, that failure would necessitate recusal. We note that although this Court has vacated many rulings on the basis that the trial court did not comply with **Smith**, this Court has never held that such a failure was sufficient to warrant recusal of the trial judge. *See, e.g.,* **Battery All., Inc. v. Allegiant Power, LLC**, No. W2015-02389-COA-R3-CV, 2017 WL 401349, at *9

**Conclusion**

The judgment of the Davidson County Circuit Court is affirmed and this cause is remanded to the trial court for further proceedings. Costs of this appeal are taxed to Appellants Kevin Medley, individually and d/b/a Kevin Medley, LLC; Canvas Lounge LLC; and 3 Entertainment Group LLC d/b/a WKND, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

(Tenn. Ct. App. Jan. 30, 2017); *McEarl v. City of Brownsville*, No. W2015-00077-COA-R3-CV, 2015 WL 6773544, at *3 (Tenn. Ct. App. Nov. 6, 2015); *Ray v. Petro*, No. M2013-02694-COA-R3CV, 2015 WL 137309, at *5 (Tenn. Ct. App. Jan. 9, 2015), perm. app. denied (Tenn. May 14, 2015); *Potter's Shopping Ctr., Inc. v. Szekely*, 461 S.W.3d 68, 72 (Tenn. Ct. App. 2014).