IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 18, 2011 Session

## CYNTHIA LYNN LINER v. ROBERT CLIFFORD LINER, JR.

**Appeal from the Chancery Court for Rutherford County**
**No. 09-0993DR       J. Mark Rogers, Judge**

**No. M2010-00582-COA-R3-CV - Filed April 13, 2011**

In a divorce action, Husband appeals the trial court's classification of the residence he owned before the parties' marriage as marital property and its award of one-half of the equity in the residence to Wife. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Laurie Y. Young, Murfreesboro, Tennessee, for the appellant, Robert Clifford Liner, Jr.

Gary D. Beasley and John Carson Taylor, Murfreesboro, Tennessee, for the appellee, Cynthia Lynn Liner.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Robert Liner ("Husband") and Cynthia Liner ("Wife") were married in 2003. Wife filed for divorce on July 8, 2009, and Husband filed a counter-complaint on July 22, 2009. The distribution of most of the assets and debts was stipulated by the parties. The only issue at trial was the division of the marital residence.

Both parties owned separate residences prior to the marriage. When the parties married, Wife and her two children moved into Husband's residence. A couple of months before the parties married, Husband took out a line of credit in his name, which was increased as funds were needed. In August 2003, the balance of the loan was $671.97. In September 2004, the line of credit had a balance of $34,828.33. The funds were used to

expand the residence to include a bedroom, bathroom, den, and bonus room. The mortgage on the home was paid out of the parties' joint account.

Wife retained her residence until March 2005. The mortgage for her home was paid out of the parties' joint account. On March 31, 2005, Wife received $32,178.35 from the sale of her residence, which she deposited into her separate bank account.

Husband refinanced the mortgage on the marital home in 2005. At that time, both of the parties' names were placed on the note. Wife's name was not placed on the title to the home.

Wife earned the following income during the parties' marriage: $10,422.00 in 2004, $816.55 in 2005, no income in 2006, approximately $5,000 in 2007,[1] $13,863.16 in 2008, and $17,862.08 in 2009. Husband testified that he earned gross incomes of $63,405.60 in 2006, $66,116.86 in 2007, $54,945.66 in 2008, and $54,098.45 in 2009.

In 2004, Wife's previous husband died, and she received a "substantial amount" of money as the beneficiary of his 401k.[2] She deposited this money into her separate bank account. Wife received Social Security checks for her two children totaling $2,100 per month. Wife deposited the majority of these funds into her separate bank account.

A final hearing was held on January 19, 2010. The court found that the marital residence was the separate asset of Husband at the time of the parties' marriage, but that it had become a marital asset through transmutation. The court found that three of the four factors relied upon in *Hagler v. Hagler*, No. E2007-02609-COA-R3-CV, 2009 WL 838163, at *3 (Tenn. Ct. App. Mar. 31, 2009) (quoting *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006)), applied in this case—the parties intended the residence to be the marital residence, both parties contributed to the ongoing maintenance and management of the property, and the credit of the non-owner spouse was used to improve the property.

The value of the residence was found to be $125,000, and the principal was $67,606.06. The trial court lowered the value of the home by 6% to account for prospective real estate commission. Thus, proceeds from a sale would bring $117,500. The anticipated

---

[1] Wife's 2007 W-2 reflects wages of $1,042.37. Wife's brief states that she earned $4,399 from the Rutherford County Board of Education and $1,042 from Scrapping U.S.A. in 2007.

[2] It is unclear from the record how much Wife received. The parties agree that, on June 20, 2005, Wife's separate bank account had a balance of $52,528.

proceeds were reduced by the outstanding principal, leaving equity in the amount of $49,893.94. The court awarded Wife one-half of the equity, or $24,946.97.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Husband appeals the trial court's classification of the residence owned by Husband prior to the marriage as marital property and the distribution of the equity in the residence.

Classification of Residence

The determination as to whether property is marital or separate is "inherently factual." *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *4 (Tenn. Ct. App. Aug. 6, 2007). Thus, we review the trial court's classification of property "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).

In making its division of property, the trial court must first classify the property as either separate or marital property, pursuant to Tenn. Code Ann. § 36-4-121(b). *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). This distinction is important because Tenn. Code Ann. § 36-4-121(a) provides for the distribution of marital property only.

In this case, before the parties were married, Husband owned what became the marital residence. Tenn. Code Ann. § 36-4-121(b)(2)(A) provides a definition of separate property, which includes "[a]ll real and personal property owned by a spouse before marriage." Indeed, property acquired by a spouse prior to a marriage is presumed to be separate property. *Fox*, 2006 WL 2535407, at *4. "A party seeking to rebut this presumption has the burden of proving by a preponderance of the evidence that the asset acquired prior to marriage has become marital." *Id.*

The trial court found that the marital residence was the separate asset of Husband at the time of the parties' marriage, but that it had become a marital asset through transmutation. Separate property can become marital property by virtue of transmutation "if there is evidence that the parties intended for it to be marital property and treated it as such."

*Whitley v. Whitley*, No. M2003-00045-COA-R3-CV, 2004 WL 1334518, at *6 (Tenn. Ct. App. June 14, 2004). The trial court relied on *Hagler v. Hagler* in making its determination:

> Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property.

*Hagler*, 2009 WL 838163, at *3 (quoting *Fox*, 2006 WL 2535407, at *5).

The court found that factors 1, 2, and 4 applied in the instant case. Husband concedes that the parties used the residence at issue as the marital residence (factor 1), and it is undisputed that Wife's name was not placed on the title to the residence (factor 3). Therefore, we must consider factors 2 and 4.

With respect to the second factor, the ongoing maintenance and management of the property, Husband insists that Wife failed to help financially maintain the residence. Husband points out that the mortgage payment on the residence was paid out of the parties' joint checking account, to which Wife failed to contribute. Husband claims that Wife's only financial contribution was the purchase of a refrigerator and washer and dryer, and she took the washer and dryer with her when she vacated the residence. It is true that Wife did not work during much of the parties' marriage and failed to make significant financial contributions compared to Husband. However, she did make some financial contributions. From 2004 to 2009, Wife earned a total of approximately $47,963.79 in income, which went into the parties' joint account.[3] The mortgage and utilities for the home were paid out of this joint account. Wife maintained a separate account where she put the $32,178.35 representing the proceeds from the sale of her home in March 2005. Wife testified that she sometimes used her separate account to pay for groceries, gas, cleaning supplies, and dining out, all of which financially benefitted Husband.

Husband overlooks Wife's non-financial contributions to the ongoing maintenance and management of the residence. Wife testified that she made contributions to improving the home, including laminating the kitchen floors; caulking windows, countertops, and vinyl flooring; painting the kitchen (twice), living room, bathroom, and hall; hanging curtain rods and curtains; and landscaping the front and side yard and around the pool.

---

[3] Wife testified that the only portion of her income that did not go into the parties' joint account was $816.55 in 2005.

With respect to the fourth factor, using the credit of the non-owner spouse to improve the property, Husband took out a line of credit in his name only just before the parties' married in order to expand the residence. The property was refinanced in 2005 in order to obtain a better interest rate. Wife's name was not placed on the title to the home at that time, but her name was placed on the note, making her liable. The parties also replaced and expanded a deck at the residence. It was paid for on a Lowe's credit card, which Husband testified was paid off from the parties' joint account.

The evidence shows that the residence was intended to be the marital home. Given Wife's financial and non-financial contributions to the ongoing maintenance and management of the property, as well as the use of her credit to improve the property, the evidence does not preponderate against the trial court's decision to classify the residence as marital property.

### Distribution of Equity in Residence

Husband argues that the trial court erred in awarding Wife one-half of the equity in the residence. Tenn. Code Ann. § 36-4-121 governs the distribution of marital property. After classifying the property of a divorcing couple, the trial court is charged with equitably dividing the marital property. "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c).[4] Trial judges

_____

[4] Tenn. Code Ann. § 36-4-121(c) instructs the court to consider all relevant factors in making an equitable division of marital property, including the following:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(continued...)

have wide latitude in fashioning an equitable division of marital property, and appellate courts accord great weight to a trial judge's division of marital property." *Kinard*, 986 S.W.2d at 230-31 (citations omitted). Thus, "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996) (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994)). More specifically, "we will ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Kinard*, 986 S.W.2d at 231.

Evidence was presented about a number of the Tenn. Code Ann. § 36-4-121(c) factors. The parties' six-year marriage was a marriage of relatively short duration. *See Batson v. Batson*, 769 S.W.2d 849, 851, 859 (Tenn. Ct. App. 1988) (designating the parties' seven-year marriage as "relatively short"). Neither party raised any health concerns. Both parties were employed at the time of divorce and earned their own income. Husband, an automotive technician, earned significantly more income than Wife. Wife has two years of college education.

As discussed previously, Wife made a contribution to the marriage as a homemaker. She also made some contribution to the appreciation and preservation of the home. Husband claims Wife dissipated her own separate property. He asserts that Wife squandered the $32,178.35 that she earned from the sale of her home in 2005 on her scrapbooking hobby and contributed little to the marriage financially. While there is evidence in the record to suggest that Wife made frequent visits to scrapbooking stores, there is no evidence about the amount of money that Wife spent on this hobby. There is also evidence that Wife spent her own money on items that supported the family, such as groceries, gas, and dining out, but no evidence of the amount.

---

[4](...continued)
(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

We cannot say that the evidence presented preponderates against the trial court's decision to divide the equity in the residence equally.

CONCLUSION

The decision of the trial court is affirmed. Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE