IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 4, 2016

**KIP HAROLD ROBY v. TERESA COAKLEY ROBY**

**Appeal from the Circuit Court for Montgomery County
No. MCCCCVDN142529  John H. Gasaway, III, Judge**

_____

**No. M2015-01987-COA-R3-CV – Filed August 1, 2017**

_____

This case arises out of the demise of a long-term marriage.  The trial court granted the wife a divorce based on the husband's inappropriate marital conduct and, after finding the wife economically disadvantaged, awarded her transitional alimony for a duration of 12 years.  The husband appeals the final decree of absolute divorce solely on the issue of alimony.  Our review of the record leads us to conclude that the trial court did not err in awarding alimony, nor did it err in the amount or duration of its award.  However, we modify the court's award of transitional alimony to an award of alimony in futuro.  We affirm in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as
Modified and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and BRANDON O. GIBSON, JJ., joined.

Steven C. Girsky, Clarksville, Tennessee, for the appellant, Kip Harold Roby.

Katie B. Klinghard, Clarksville, Tennessee, for the appellee, Teresa Coakley Roby.

**OPINION**

**I.**

On December 16, 2014, after nearly 30 years of marriage, Kip Harold Roby ("Husband") filed a complaint for absolute divorce from Teresa Coakley Roby ("Wife") in the Circuit Court for Montgomery County, Tennessee.  As grounds, Husband alleged irreconcilable differences and inappropriate marital conduct.  Wife filed an answer and

counterclaim, denying that she was guilty of inappropriate marital conduct and instead alleging that Husband was guilty of inappropriate marital conduct. Wife also requested an award of alimony.

Husband and Wife mediated and resolved many of the issues related to the divorce. By the time the matter was heard on August 17, 2015, only the grounds for divorce and the question of alimony remained to be decided.

Husband and Wife were 49 and 50 years old, respectively, at the time of the hearing and had been married for 30 years. Husband retired from the United States Air Force in 2004, after serving 20 years. The couple had two adult children, and Wife spent the early years of the marriage as a full-time homemaker. During Husband's military service, the family relocated frequently, living in Alaska, Nebraska, Tennessee, Florida, and Illinois. Following Husband's retirement from the military, the family settled in Middle Tennessee, and Wife returned to work outside of the home.

The parties disagreed on when the marital difficulties arose, but Husband informed Wife that he was unhappy and felt that he no longer loved her in the fall of 2013. While Husband claimed that the two grew apart, Wife testified that Husband had started spending increasing amounts of time online chatting with other women. She also testified that she asked Husband to participate in marital counseling, but he refused.

The following year, in October or November 2014, Husband asked Wife for a divorce and requested that she move out of the marital home. Wife obliged, moving into her mother's basement, where she resided at the time of the hearing. Shortly thereafter, Husband informed Wife, via email, that he was dating another woman.

Husband worked for the Tennessee Valley Authority ("TVA"), making $84,080 per year. In addition to his salary, Husband testified that he often received overtime pay, but overtime was not guaranteed. Still, Husband conceded that, including overtime pay, he made approximately $113,000 in 2014 and that he had likely made over $100,000 per year for the past three years. The testimony revealed that, in addition to his income from TVA, Husband received service-related disability in the amount of $1,200 monthly. He also received $1,907 per month in military retirement benefits. Conversely, Wife was employed as the secretary of the local school board, making roughly $32,400 per year.

The parties each testified concerning their agreed division of marital property and debt. The parties agreed that Husband would retain the marital residence, a house along with 58 acres of land valued at $315,000. They further agreed that Husband would refinance the property, placing it in his name alone, and pay Wife half of the equity after deducting refinancing costs. The parties estimated the net equity for each party would be approximately $68,000.

The couple owned three vehicles, a 2009 Chrysler sport utility vehicle, a 2003 Ford F150, and a 1974 Ford Bronco. Though the SUV was originally intended for Wife's use during the marriage, the parties agreed that Husband would receive it in the divorce because Wife could not afford to pay the debt associated with the vehicle. Husband also chose to keep the Bronco that he purchased as "a hobby." Wife would receive the F150, which was paid in full.

To satisfy unsecured, marital debt, the couple agreed to liquidate a 401(k) retirement account with Husband's employer, with the balance of the account being divided between them. After payment of taxes and penalties, the parties estimated that they would each receive approximately $13,400. They also agreed to equally divide Husband's military retirement benefits.

Taking these divisions into account, Husband estimated that his post-divorce gross monthly income would be $9,494, and Wife estimated that her post-divorce gross monthly income would be $3,607. Husband testified that, after payment of anticipated expenses, he would have an excess of $1,446.65 per month. However, Husband's expenses included an estimated monthly payment of $675 to his two adult children, a $124.66 premium for a Survivor Benefit Plan that would be paid by Wife following the divorce, and a $351.12 expense for telephone service that Husband acknowledged would only be approximately $49 after the divorce.

Wife testified that, after payment of her current expenses, she would have approximately $500 left over. But her expenses did not include a retirement contribution or her anticipated need for a more reliable vehicle.

The trial court issued a final decree on September 11, 2015. The court granted Wife a divorce on the ground of inappropriate marital conduct. The court found this based on Husband's statements that he did not love Wife anymore and his request that she move out of the marital residence. The decree incorporated and approved the parties' mediation agreement and approved their agreement as to the division of the real property. As for alimony, after considering the relevant statutory factors, the court awarded Wife transitional alimony in the amount of $500 per month for 144 months, or 12 years. The court further determined that each party would be responsible for their own attorney's fees.

## II.

On appeal, Husband challenges the amount and duration of the alimony awarded to Wife. While acknowledging an ability to pay alimony, Husband argues that Wife failed to demonstrate a need for alimony in an amount and of a duration awarded by the trial court.

3

In a non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

"[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). In reviewing the trial court's award of alimony, we apply an abuse of discretion standard. *Id.* "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* But we "are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998).

Alimony decisions are factually driven and "involve[ ] the careful balancing of many factors." *Gonsewski*, 350 S.W.3d at 105. The General Assembly has directed courts to consider the factors in Tennessee Code Annotated § 36-5-121(i) when making these awards. The factors include:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

4

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2014). The two most important factors are "the disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski*, 350 S.W.3d at 110 (citation omitted).

Here, the evidence does not preponderate against the trial court's finding that Wife was economically disadvantaged. For a significant portion of the parties' marriage, Wife took on the role of homemaker and cared for the couple's children while Husband was the wage earner. Relocating to a new state four different times during the first 20 years of the marriage prevented Wife from developing a career outside of the home.

At the time of the hearing, she was making approximately $2,700 per month in her position as secretary of the school board. Even taking her portion of husband's military retirement into account, Wife's monthly income was roughly a third of Husband's monthly income. And, as she is now in her fifties, it is unlikely that she could obtain additional training to allow her to earn a higher salary before she reached retirement. *See Jekot v. Jekot*, 232 S.W.3d 744, 753 (Tenn. Ct. App. 2007) ("[A]t the time of trial, Wife was fifty-five years of age, and we do not believe it is realistic to expect that she will be able to effectively compete for employment as she nears an age at which many retire."); *Grant v. Grant*, No. M2014-01835-COA-R3-CV, 2016 WL 2898434, at *10 (Tenn. Ct. App. May 12, 2016) ("At age 53, it is difficult to imagine what type of additional training Wife could obtain to enable her to be employed at a higher rate of pay before she reached retirement age.").

The evidence does not preponderate against the trial court's finding that Wife had a need for alimony. Regarding her expenses, Wife acknowledged that the figures were

5

somewhat speculative, but she estimated she would be left with an excess of $500 per month after she purchases a home. This figure, however, did not take into account the purchase of a vehicle to replace the truck that she drove at the time of the hearing or savings for retirement.

As for duration of the alimony, the court's award was designed such that Wife would receive payments until she reached the age at which she could claim Social Security retirement benefits. Wife originally requested 15 years of alimony, but the trial court focused on the early retirement benefit age instead.

Although we find no abuse of discretion in the amount or duration of the alimony award, we find the court erred in designating the alimony as transitional. Transitional alimony, in particular, is appropriate if the court finds one spouse is economically disadvantaged and needs financial assistance in adjusting to the economic consequences of divorce, but rehabilitation is not necessary. Tenn. Code Ann. § 36-5-121(d)(4). This type of alimony is "designed to aid a spouse who already possesses the capacity for self-sufficiency" but needs temporary financial assistance to adjust to the economic reality of one income. *Gonsewski*, 350 S.W.3d at 109. Thus, our supreme court has characterized transitional alimony as "a form of short-term support." *Id*. Concerning the duration of transitional alimony, we have observed that we have "affirmed an award of transitional alimony for a period of eight years at most." *Lunn v. Lunn*, No. E2014-00865-COA-R3-CV, 2015 WL 4187344, at *10 (Tenn. Ct. App. June 29, 2015).

Alimony in futuro, on the other hand, is "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). This long-term support is awarded when one spouse is relatively economically disadvantaged and rehabilitation is not feasible. *Id.* It is appropriate where,

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36-5-121(f)(1).

In the case before us, due to the disparity in income and relative earning capacity between these spouses, we conclude that the court's award of transitional alimony should be modified to an award of alimony in futuro. *See Lunn*, 2015 WL 4187344, at *11 (modifying an award of transitional alimony for 16 years to alimony in futuro); *Lubell v. Lubell*, No. E2014-01269-COA-R3-CV, 2015 WL 7068559, at *18 (Tenn. Ct. App. Nov. 12, 2015) (concluding that a modification of an award of transitional alimony to alimony

in futuro was appropriate).  Under the circumstances of this case, an award of alimony for a period of 144 months, or 12 years, constitutes long-term support.

## III.

For the foregoing reasons, we modify the trial court's award of transitional alimony to an award of alimony in futuro.  We affirm the alimony award in all other respects and remand for such other proceedings as are appropriate and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE