IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 6, 2025

**IN RE ISAIAH M.**

**Appeal from the Chancery Court for Washington County**
**No. 24-AD-0225     Suzanne Cook, Judge**

_____

**No. E2025-01509-COA-T10B-CV**

_____

In this termination of parental rights case, the trial court denied Appellant's multiple motions to recuse. Appellant filed this interlocutory appeal as of right pursuant to Tennessee Supreme Court Rule 10B. Discerning no error, we affirm.

**Tenn. Sup. Ct. R. 10B Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II , and W. NEAL MCBRAYER, JJ., joined.

A.M., Tennessee, appellant, *pro se*.

Sandy Phillips, Johnson City, Tennessee, for the appellees, K.M. and B.M.

**MEMORANDUM OPINION[1]**

**I. BACKGROUND**

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This appeal follows a protracted series of cases involving Appellant A.M.; her former husband, Appellee B.M., and his wife; and the many judges, attorneys, and officials drawn into the case. The procedural background is long and convoluted, and we summarize it here as briefly as possible and only as necessary to our disposition of A.M.'s motions to recuse the current trial judge.[2]

A.M. and B.M. were married in September 2016; separated in August 2018; and divorced in March 2019. In 2017, one child was born of the marriage. In the divorce proceedings, the Circuit Court for Washington County ("the circuit court") designated B.M. the child's primary residential parent and granted A.M.'s limited, supervised visitation. Acrimonious post-divorce litigation continued in the circuit court.

On March 14, 2024, B.M. and his current wife ("Stepmother"; together, "Appellees") filed a petition in the Washington County Chancery Court ("the trial court") to terminate A.M.'s parental rights and for adoption by Stepmother ("the termination action"). In their petition, Appellees alleged as grounds: 1) abandonment by failure to visit and support; 2) mental incompetence to provide care; and 3) the failure to manifest an ability and willingness to parent. [*K.M.*] *v.* [*A.M.*], No. E2024-00629-COA-T10B-CV, 2024 WL 2564454, at *1 (Tenn. Ct. App. May 23, 2024). The matter was set to be tried on July 22-23, 2024. On April 5, A.M., acting *pro se*, filed a motion to dismiss on the grounds that the trial court lacked personal jurisdiction and subject matter jurisdiction was vested in the circuit court. *Id*. On April 9, the trial court entered an order directing the parties to appear on May 3 for a scheduling conference. *Id*. On April 23, A.M. responded, asserted that she no longer resided in Tennessee, and asked to be permitted to appear at the May 3 conference via Zoom. *Id*. at *2. On April 23, 2024, A.M. also filed her first motion to recuse the trial court judge. *Id*. In her motion, A.M. alleged that the trial judge "'ha[d] a history of admitted bias against [A.M.] due to [A.M.'s] federal lawsuit' against the Washington County judges." *Id*. A.M. also alleged that when she filed her application for permanent residency status ("the immigration matter") when married to B.M., the trial judge was employed by the law firm that prepared her application. *Id*. She admitted, however, that the law firm withdrew from the immigration matter. *Id*. By order entered on April 24, the trial court denied A.M.'s motion to recuse, and A.M. filed a notice of

---

[2] A.M. has filed multiple actions in Tennessee state courts, the U. S. District Court for the Eastern District of Tennessee, and the U. S. District Court for the Southern District of Texas. She has named as defendants: the trial judge; numerous state and federal judges; Appellees; Appellees' legal counsel; the *guardians ad litem* and their law firms; the Tennessee Attorney General and Assistant Attorney Generals; and others. A.M. has filed innumerable motions in these actions, and we observe that the U. S. District Court for the Eastern District of Tennessee and the U.S. District Court for the Southern District of Texas have enjoined A.M. from filing any additional motions or pleadings without express permission. We discuss these related actions only briefly where necessary.

appeal to this Court pursuant to Tennessee Supreme Court Rule 10B ("Rule 10B").[3] *Id.* On April 24, the trial court also denied A.M.'s request to appear via Zoom on May 3 upon determining that A.M. used a Johnson City, Tennessee, address on her recusal motion. *Id.* at *2-3. On May 3, the trial court denied A.M.'s motion to dismiss, allowed the *guardian ad litem* ("GAL") to withdraw, and appointed a new GAL.[4] *Id.* at *3. On May 23, this Court affirmed the trial court's denial of A.M.'s motion to recuse. *Id.* at *9. The trial court re-set the matter to be heard on September 16, 2024.

On August 6, 2024, A.M. filed a notice of removal of the case to the United States District Court for the Eastern District of Tennessee ("the Tennessee district court"). On August 27, Appellees filed a motion to remand the case to the trial court. On May 21, 2025, the Tennessee district court entered a memorandum opinion and order remanding the case to the trial court for lack of jurisdiction under 28 U.S.C. § 1446 ("the removal statute"). On June 3, 2025, A.M. filed a notice of appeal to the Court of Appeals for the Sixth Circuit seeking reversal of the Tennessee district court's order of remand. On July 31, the Sixth Circuit dismissed her appeal for failure to prosecute. A.M. moved the Sixth Circuit to reinstate her appeal; the Sixth Circuit denied her motion on September 22, 2025.[5]

Following remand by the Tennessee district court, proceedings continued in the trial court. By order entered May 27, 2025, the trial court reset the trial for July 18, 2025. Before the July hearing date, A.M. filed several motions, including a motion for sanctions against Appellees and their legal counsel and a motion to stay the matter. The trial court denied the motions, and on June 3, A.M. filed her second motion to recuse the trial judge. By order entered on June 4, the trial judge denied A.M.'s motion to recuse.

By order entered June 10, 2025, the trial court set pending motions to be heard on June 18. On the morning of the hearing, A.M. fax-filed notice to the trial court stating that she refused to attend the hearing. She indeed did not appear on June 18, and the trial court denied her pending motions upon finding that A.M. neither requested a hearing nor offered any proof in support of her motions. On the same day, A.M. filed her third motion to recuse the trial judge. By order of June 20, the trial judge denied the third recusal motion.

---

[3] In its April 24, 2024, order, the trial court explained that A.M. had sued all the trial judges in the First Judicial District for issuing a joint order banning cellphones in the courtrooms. On March 5, 2024, the suit was dismissed for failure to serve process on several defendants, including the trial judge. [K.M.] v. [A.M.], 2024 WL 2564454, at *2.

[4] We observe from the record that A.M. did not appear at the May 3, 2024, scheduling conference.

[5] Although the Sixth Circuit's orders are not in the record, the trial court referenced them in its September 2025 orders denying A.M.'s fifth and sixth motions to recuse.

On June 30, 2025, A.M. filed a motion to appear remotely via Zoom for the July 18 trial. By order entered on July 1, the trial court determined that A.M.'s in-person testimony was necessary in the termination action and denied her motion to appear remotely. The trial court stated:

> [A.M.] is a party, not merely a witness, and as such the Court finds it critical for her to appear in person to offer testimony for herself, to be cross-examined, and for her to conduct direct and cross examinations of witnesses on her behalf within the applicable rules of procedure and evidence.

On July 2, 2025, A.M. filed a notice of removal of the case to the United States District Court for the Southern District of Texas ("the Texas district court").[6] In her petition for removal, A.M. alleged that Appellees filed their termination action "to obstruct [A.M.'s] rights to due process and equal protection pursuant to the Parenting Plan ordered in the April 26, 2023 order" entered in the divorce action in the circuit court. On August 10, Appellees moved to remand the case to Tennessee. A.M. filed multiple motions in the Texas district court, and, by order of September 23, the Texas district court stayed all pending motions pending adjudication of Appellees' motion to remand the matter to the trial court. Following a hearing on October 6, 2025, on October 7, 2025, the Texas district court entered an order remanding the case effective October 6, 2025.

In the meantime, A.M. failed to appear in the trial court on July 18, 2025, and the trial court reset the matter to September 8, 2025. On August 20, 2025, A.M. filed her fourth motion to recuse, which the trial court denied. A.M. did not appear at the September 8 hearing, and, by order entered on September 21, 2025, the trial court reset the trial to December 2, 2025.

On September 23, 2025, A.M. filed her fifth motion to recuse the trial court judge. In her motion, A.M. asserted that the trial court judge and a senior federal judge in a separate, unrelated lawsuit in the Texas district court were communicating off the record and conspiring against her. By order entered on September 24, the trial court denied A.M.'s fifth recusal motion.

On September 26, 2025, A.M. filed a notice styled: "limited appearance and motion to quash purported service, vacate any resulting deadlines or defaults, and to direct proper service (Tenn. R. Civ. P. 4 & 12.02(4)-(5))." On the same day, A.M. also filed a "declaration of change of address" to a post office box in Austin, Texas.[7]

---

[6] We observe that A.M.'s appeal to the Sixth Circuit remained pending when she filed a notice of removal to the Texas district court.

[7] A.M. referenced her Post Office Box address as: Office of the Texas Attorney General, Victims of Crime Division, c/o A.M.

On September 27, 2025, A.M. filed her sixth motion to recuse. In her motion, A.M. asserted that the trial judge's characterizations of A.M.'s conduct in her September 24 order demonstrated bias against her. A.M. also asserted that the trial court's "uneven enforcement on proper service and personal jurisdiction" demonstrated bias. By order entered on September 29, the trial court denied A.M.'s sixth recusal motion. On the same day, A.M. filed a Rule 10B notice of interlocutory appeal of the trial court's orders denying her fifth and sixth motions to recuse.[8]

## II. ISSUE PRESENTED

In an interlocutory appeal pursuant to Rule 10B, the only order(s) this Court may review is/are the trial court's order(s) denying the motion(s) to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). Under Rule 10B, "we may not review the correctness or merits of the trial court's other rulings." *Id.* Accordingly, the sole issue before us is whether the trial court erred in denying A.M.'s fifth and sixth motions to recuse.

## III. STANDARD OF REVIEW

Appellate review of a trial court's ruling on a motion to recuse is *de novo*. Tenn. Sup. Crt. R. 10B § 2.01. Accordingly, we examine the record anew and review the trial court's conclusions with no presumption of correctness. *Elseroad v. Cook*, 553 S.W.3d 460, 463 (Tenn. Ct. App. 2018).

## IV. ANALYSIS

---

[8]Appellees have not filed an answer to A.M.'s Rule 10B petition. Under Rule 10B §2.05:

> If the appellate court, based upon its review of the petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court, or may remand to the trial court for the taking of proof and making further findings on matters designated by the appellate court.

We have determined that no answer from Appellees is necessary to our review.

We begin our analysis with the well-settled assurance that "'Tennessee litigants are entitled to have cases resolved by fair and impartial judges.'" *Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023) (quoting *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020)). As our supreme court recently has reiterated:

> To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.
>
> To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).
>
> Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis [v. Liberty Mut. Ins. Co.*,] 38 S.W.3d [560,] 564–65 [(Tenn. 2001)]).

*Id.*

Additionally, "[a] trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal." *Id*. at 879 (citations omitted). The party seeking recusal of the judge "bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case." *Id*. at 878-79 (citations omitted).

A trial judge's adverse rulings, "'even if erroneous, numerous and continuous, do not, without more, justify disqualification.'" *Id*. at 879 (quoting *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). Further, a judge's adverse rulings in a prior proceeding do not provide a basis for recusal. *Id.* Our supreme court has explained:

The "adversarial nature of litigation" makes it necessary for trial judges to "assess the credibility of those who testify before them, whether in person or by some other means," and "the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. . . . If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartial[it]y issue for strategic advantage, which the courts frown upon."

*Id.* (quoting *Davis*, 38 S.W.3d at 565).

The person moving for recusal bears the burden of proof to present evidence that would cause a reasonable, disinterested person to reasonably question the judge's impartiality. *Adkins v. Adkins*, No. M2021-00384-COA-T10B-CV, 2021 WL 2882491, at *5 (Tenn. Ct. App. July 9, 2021) (citations omitted). Additionally, as this Court has recently reiterated:

"If the bias is alleged to stem from events occur[r]ing in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 552 (Tenn. Ct. App. 2017) (quoting *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014)).

*Cooper v. Cooper*, 704 S.W.3d 784, 799–800 (Tenn. Ct. App. 2024), *appeal denied* (Nov. 14, 2024). We recently emphasized:

"'**Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial**.'" *Watson v. City of Jackson,* 448 S.W.3d 919, 933 (Tenn. Ct. App. 2014) (quoting *Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)).

*Adkins*, 2021 WL 2882491, at *5 (Tenn. Ct. App. July 9, 2021) (emphasis provided by *Adkins*).

With these standards in mind, we turn to A.M.'s appeal of the trial court's denial of her fifth and sixth motions to recuse.

**1. The Fifth Motion to Recuse**

In her 10B appellate petition, A.M. first asserts that, under 28 U.S.C. § 1446(d), the trial court acted without jurisdiction when it entered substantive adverse orders after the case was removed to the Texas district court. She contends that "these extra-jurisdictional actions, which were taken despite [A.M.'s] notice that she would not appear precisely because the state court lacked jurisdiction, create an appearance of impropriety and demonstrate a level of antagonism that requires the judge's disqualification under Tennessee Supreme Court Rule 10[.]" This argument is without merit for two reasons. First, A.M.'s assertion that the trial court lacked subject matter jurisdiction did not and does not make it so. Second, we may only review the trial court's orders denying A.M.'s motions to recuse, and A.M. did not rely on this basis in her fifth or sixth motions to recuse. *See Harvey v. City of Memphis*, No. W2025-01145-COA-T10B-CV, 2025 WL 2402063, at *5 n.2 (Tenn. Ct. App. Aug. 19, 2025) (citing *see Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012)).

A.M. further asserts:

> . . . the trial judge's actions and comments – including unexplained coordination with a related federal case and harsh, unfounded characterizations of Appellant's litigation – create an appearance of bias requiring recusal under Tennessee Supreme Court Rule 10, Code of Judicial Conduct Canon 2.11(A)[.]

From our review of the record, we note that in her fifth motion to recuse, A.M. sought the recusal of the trial judge "and in the alternative for disclosure of any off-record communications concerning this case or related litigation in the Southern District of Texas." She asserted:

> This motion is not about disagreement with judicial rulings. It is about the appearance that the Court's scheduling and case-management decisions on and around September 8, 2025 were influenced by, coordinated with, or otherwise affected by developments in related federal litigation in Texas before [the Texas district judge] involving the same family actors and their counsel—creating a reasonable basis to question impartiality. See Tenn. Sup. Ct. R. 10, RJC 2.11(A) (disqualification where a judge's impartiality might reasonably be questioned) and RJC 2.9 (limits on *ex parte* communications). The Texas record …reflects chambers communications pre-announcing outcomes and a same-day administrative closure/stay, temporally aligned with this Court's reset of the adoption trial to December 2, 2025—together giving rise to an objective appearance problem that Rule 10B is designed to address.

- 8 -

A.M. stated that, in her action against Walmart, et al., the Texas federal district court "canceled a previously-noticed conference and pre-announced that the court would grant a stay pending arbitration and allow a short amendment window, followed by orders entered that day staying/administratively closing the case[]" on the same day that the trial court reset the trial in this case to December 2, 2025. She argued that "the close temporal linkage" of the state and federal courts' orders "would lead a reasonable, fully informed observer to harbor doubts about whether developments in one forum were influencing the other by off-record channels." A.M. asserted that, "even absent proof of actual bias[,]" an appearance of impartiality warranted recusal of the trial judge.

A.M. attached her motion to recuse and disqualify the Texas district court judge as an exhibit to her fifth motion to recuse the trial court judge. In that motion, A.M. asserted that the district court judge had "engaged in administering justice favorably to the Defendants and their attorneys because Plaintiffs are pro se." She further argued that the district court judge was aware that the actions of the defendants impacted the "plans and goals" of Appellees. A.M. also argued that the Texas district court judge was "making every effort to protect the best interest of [Appellees' legal counsel] and her law firm[,]" who A.M. added as defendants in her amended complaint against Walmart. A.M. asserted that her claims against Appellees and their counsel were not subject to arbitration. She alleged that the district court judge had improperly

> possibly received *ex parte* information from Judge Cook or the parties associated with the case in Tennessee that the hearing was going to be continued to December 2, 2025 at 9 am Exhibit 3. Once [the district court judge] received this information he immediately cancelled the pre trial conference showing that it was dependent upon the best interests of [B.M. and K.M.] in Tennessee.

In its September 24, 2025, order denying A.M.'s fifth motion to recuse, the trial court determined that A.M.'s asserted grounds in her fifth motion to recuse were based on her dissatisfaction with the Texas district court's actions in unrelated litigation. The trial court stated that A.M.'s allegations of a conspiracy and "off record channels" between the courts were false, unfounded, and unsupported. The court concluded that A.M. had filed numerous lawsuits and filings in "various forums in an effort to delay, harass, and cause needless increase in the cost of litigation in the termination/adoption case." The trial judge stated:

> [A.M.] persists in asserting delusions and alleged conspiracies that are not supported by facts nor law, presents falsehoods and misrepresentations along with unsupported conclusory "facts" and "law", and continues to abusively pursue anyone who disagrees with her. [A.M.] continues to attempt to impose her will on the assignment of judges to her cases. [A.M.'s] actions are blatant attempts to manufacture grounds against anyone with whom she disagrees.

- 9 -

All of the same constitute an improper purpose, harassment, needless delay, and increased costs of litigation.

From our review of the record, we observe that, on September 8, 2025, the Texas district court emailed the litigants and canceled a "telephonic conference" scheduled for that morning and granted a pending motion to stay pending arbitration. It also provided A.M. with seven days to file an amended complaint. Defendants sought confirmation, and the district court confirmed its order to submit the matter to arbitration. On September 14, the district court emailed the parties and stayed the defendants' deadlines to respond to A.M.'s amended complaint until 14 days after any arbitration. The court closed the matter "pending the outcome of arbitration."

As noted above, the trial court set this termination matter to be heard on September 8, 2025, because A.M. failed to appear at a hearing scheduled for July 18, 2025. Further, we observe from the record that, on September 16, the trial court entered an order that states, in its entirety:

> Petitioners' counsel, Sandy Phillips, and Guardian ad Litem, James R. Cook II, appeared on September 8, 2025. Respondent A.M. did not appear. The Court reset the trial of this matter to December 2, 2025 at 9:00 a.m.

The record contains no indication of communication, collusion, or conspiracy between the trial court and the Texas district court. Finding no appearance of impropriety, we affirm the trial court's denial of A.M.'s fifth motion to recuse and turn to her sixth motion.

## 2. The Sixth Motion to Recuse

In her appellate petition, A.M. asserts that the trial judge's "comments" and "unfounded characterizations" of A.M.'s litigation create an appearance of bias. From our review of the record, we note that in her sixth motion to recuse, A.M. asserted that the "rhetoric" contained in the trial court's order denying her fifth recusal motion, "particularly where it tracks [A.M.'s] contested mental health allegations[,]" provides a "new and independent ground" for recusal under Rule 10B. A.M. asserted that, in their petition to terminate her parental rights, Appellees alleged that she is "delusional" and "references diagnoses such as schizophrenia and delusional thinking[.]" She argued that the trial judge's September 24 order "employs matching pejoratives about [A.M.'s] 'delusions/abrasive' conduct[.]" A.M. further asserted:

> By echoing one side's unproven, merits-contested rhetoric, the Court appears to have adopted Petitioners' narrative before evidentiary adjudication.

A.M. also contended that the trial court "uneven[ly] enforced requirements related to service of process and personal jurisdiction by permitting Appellees "to press a waiver-by-participation theory to proceed without curing service." She additionally referenced a May 2024 trial court order and asserted that the order demonstrates "early merits-tilting ruling and negative characterizations."

We observe that the trial judge indeed characterized A.M.'s allegations of a conspiracy between the trial court and the district court as "delusional" in its September 24 order. The trial court's order also referenced A.M.'s numerous actions in both Tennessee state courts and two federal courts, her voluminous motions, her repeated assertions of collusion and conspiracy, and orders of the Tennessee district court and the Texas district court enjoining additional filings without express permission. As noted above, the trial court observed that A.M. "abusively pursue[d] anyone who disagrees with her."

From our review of the entirety of the record transmitted with A.M.'s Rule 10B appeal, we note that the Tennessee district court and the Texas district court indeed enjoined A.M. from filing any complaints or motions without the permission of the respective court. In so doing, both federal courts observed A.M.'s many "frivolous" filings. In its injunction, the Tennessee district court noted that A.M. had "filed or removed a dozen cases to [the] district in a little more than two years[,]" and that "[A.M.] continues to file lawsuits based on the same alleged conspiracy, but with each filing [A.M.] expands the web of conspirators." The Tennessee district court stated:

> Across all her cases, [A.M.] has alleged as part of the conspiracy: thirty-one judges, twenty-seven individuals, the United States District Court for the Eastern District of Tennessee, the United States Court of Appeals for the Sixth Circuit, its clerk, two of its case managers, two police departments, two police officers, three state courts, an assistant attorney general, and a courthouse. Her persistent claims that these defendants actively conspire against her—that they communicate, plot, scheme, and connive with the shared aim of depriving [A.M.] of her Constitutional rights—is not supported in the record. In short, [A.M.] has demonstrated a pattern of filing frivolous and vexatious lawsuits, naming as a defendant in each successive one any person who made any decision that was not to her liking.

We are satisfied that the trial court's use of "delusional" characterizes the judge's view of A.M.'s allegations of conspiracy throughout the state and federal court litigation of this case. It does not adopt Appellees' allegations regarding a mental health disorder or demonstrate bias with respect to Appellees' petition.

We turn next to A.M.'s assertion in her appellate petition that the trial court erred by dismissing her motions to recuse as "repetitive" or filed for an "improper purpose." As

noted above, A.M.'s sixth recusal motion referenced a May 2024 order and the trial court's findings regarding service of process as demonstrative of bias.

Rule 10B provides, in relevant part:

Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed *promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal.*

Tenn. Sup. Ct. R. 10B §1.01 (emphasis added). We observe that A.M. filed four motions to recuse between entry of the trial court's May 2024 order and this sixth motion to recuse. The trial court denied the motions, and A.M. did not perfect an appeal to this Court. Any allegation predicated on the trial court's May 2024 order is untimely and waived.

Similarly, we observe that A.M. refused to attend trial court hearings but did not file her motion to quash service until September 26, 2025 – fully 18 months after Appellees filed their petition. In her motion to quash, A.M. asserted that she was a Texas resident, she was not properly served at her former California address, and that the trial court did not have personal jurisdiction.[9] Upon review of the record, we note that A.M. recited a Hercules, California, address in filings throughout this litigation, including her September 25, 2025, fifth motion to recuse. Further, A.M. filed her sixth motion to recuse one day after filing her motion to quash. Moreover, the trial court has endeavored to adjudicate all motions and filings expeditiously, and it has extended multiple opportunities to A.M. to defend against Appellees' petition. The record contains no evidence of prejudice or bias on the part of the trial judge.

In closing, we note that A.M. has filed six motions to recuse based on alleged conspiracies and allegations of erroneous findings and rulings by the trial court. Even if we assume the trial court made erroneous rulings – which we do not – such rulings do not provide a basis for recusal. Accordingly, we agree with the trial court that A.M.'s motions to recuse are repetitive and have caused unnecessary delay in this termination of parental rights case.

We also emphasize that parental rights proceedings are the most important civil proceedings to come before the courts. *See e.g., In re Markus E.*, 671 S.W.3d 437, 455 (Tenn. 2023) (citations omitted). Therefore, our statutes require the trial courts and the appellate courts to expedite and prioritize termination of parental rights cases. Tenn. Code Ann. § 36-1-124(a) & (b). They also require the petitioner to prove by the high clear and

---

[9] It appears from the record that A.M. relocated from Tennessee to California at some point during the course of litigation.

convincing evidence standard: 1) the existence of statutory grounds for termination and 2) that termination of parental rights is in the child's best interest. *E.g., In re Bentley E.*, 703 S.W.3d 298, 301 (Tenn. Ct. App. 2024). We urge A.M. to assist the courts in our endeavor to act expeditiously in the best interests of her child. We also remind her that, although adverse rulings of the court do not provide a basis for recusal, they may be challenged on appeal following entry of a final judgment in the trial court.

## V. CONCLUSION

Discerning no error, we affirm the judgment of the trial court. This matter is remanded for further proceedings. Costs on appeal are assessed to the Appellant, A.M.[10] Because A.M. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/Valerie L. Smith
VALERIE L. SMITH, JUDGE

---

[10] All pending motions are hereby denied.